MR. CHIEF JUSTICE HASWELL
delivered the opinion of the Court.
Pursuant to a plea bargain agreement, defendant plead guilty to the crime of negligent homicide. The District Court sentenced defendant to consecutive terms of ten years imprisonment for negligent homicide and five years for the use of a weapon in committing that crime.
Defendant appeals from the sentence.
This is the second time defendant’s case has come before this Court. Following an early morning shootout in a Great Falls trailer court in which two men were killed, defendant Hubbard and another were tried and convicted of mitigated deliberate homicide and burglary, respectively. We reversed Hubbard’s conviction and remanded for a new trial. State v. Fish et al. (1980), Mont., 621 P.2d 1072, 37 St.Rep. 2065.
On remand, the Honorable Jack D. Shanstrom was substituted as the presiding judge. An amended information was filed charging Hubbard with negligent homicide. A written plea bargain agreement was signed and filed wherein defendant agreed to plead guilty to the crime of negligent homicide and acknowledged the possibility that the statute enhancing the penalty for use of a weapon in that crime might be applied to him.
On May 14, 1981, a hearing was held wherein defendant *109 testified to his state of mind at the time of the crime; expert witnesses testified that defendant was under some duress at the time; and friends and a deputy sheriff testified concerning events that occurred on the night of the crime. Additionally, a psychiatrist at the Montana State Prison testified that his 1979 diagnosis of defendant as antisocial was inaccurate.
The following day a sentencing hearing was held which included testimony by the district probation and parole officer, a clinical psychologist, defendant’s mother and the defendant himself. Following this hearing Judge Shanstrom ruled that the enhancement statute applied to negligent homicide and that none of the exceptions to the statute applied. He sentenced the defendant to consecutive terms of ten years imprisonment for negligent homicide and five years for the use of a weapon in that crime. Defendant appeals from this sentence raising the following specifications of error:
(1) Does the statute enhancing the penalty for use of a weapon in the commission of a crime apply to negligent homicide?
(2) Was defendant denied due process by inclusion of negligent homicide in the enhancement statute?
(3) Does the record show that defendant was acting under unusual and substantial duress precluding application of the enhancement statute?
(4) Was error committed by the sentencing judge in admitting testimony amounting to retrial of the original charge of deliberate homicide and in sentencing defendant on an incomplete reading of the trial transcript?
(5) Was defendant prejudiced by the 1979 diagnosis of defendant as antisocial which was later retracted?
(6) Does justice require the five-year enhancement to be served consecutively rather than concurrently?
The statutes at issue in this case are set out below:
“46-18-221. Additional sentence for offenses committed with a dangerous weapon. (1) A person who has been found *110 guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45-8-332(1), or other dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46-18-222.
“(4) An additional sentence prescribed by this section shall run consecutively to the sentence provided for the offense.
“46-18-222. Exceptions to mandatory minimum sentences and restrictions on deferred imposition and suspended execution of sentence. All mandatory minimum sentences prescribed by the laws of this state and the restrictions on deferred imposition and suspended execution of sentence
... do not apply if:
<<
“(3) the defendant, at the time of the commission of the offense for which he is to be sentenced, was acting under unusual and substantial duress, although not such duress as would constitute a defense to the prosecution;”
We will combine our discussion of the first and second issues because of their interrelationship. Appellant contends that (1) the legislative history of the above statutes demonstrates a legislative intent to include violent crimes (not negligent homicide) within the ambit of the legislation, (2) there is legislative intent to exclude result-oriented crimes not committed intentionally like negligent homicide, and (3) that since section 46-18-221(1) requires that defendant knowingly used a firearm, it cannot be used to enhance a sentence for negligent homicide where no specific intent is required and to do so violates defendant’s procedural due process rights.
In construing a statute, the intent of the legislature is controlling. Section 1-2-102, MCA; Dunphy v. Anaconda *111 Co. (1968), 151 Mont. 76, 438 P.2d 660, and cases cited therein. The intention of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined the courts may not go further and apply any other means of interpretation. Dunphy v. Anaconda Co., supra, and cases cited therein. Where, as here, the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. State v. Roberts (1980), Mont., 633 P.2d 1214, 38 St.Rep. 1551. The statute plainly says that “a person who has been found guilty of any offense” and while engaged in the commission of the offense knowingly uses a firearm is subject to an enhanced penalty of two to ten years. There is simply no reason for the use of legislative history to construe a statute where the language is clear and unambiguous on its face.
Nor do we see any conflict between the “knowingly” mental state required by the enhancement statute and the “negligently” mental state as it applies to negligent homicide. Negligent homicide is defined as follows:
“Negligent homicide. (1) Criminal homicide constitutes negligent homicide when it is committed negligently.” Section 45-5-104, MCA.
“Negligently” is defined as:
“(37) ‘Negligently’ — a person acts negligently with respect to a result or to a circumstance described by a statute defining an offense when he consciously disregards a risk that the result will occur or that the circumstance exists or when he disregards a risk of which he should be aware that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor’s situation. ‘Gross deviation’ means a deviation that is considerably greater than lack of ordinary care. Relevant terms such as ‘negligent’ and ‘with negligence’ have the same meaning.” Section 45-2-101(37), MCA.
*112 “Knowingly” is defined as:
“(33) ‘Knowingly’ — a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as ‘knowing’ or ‘with knowledge’ have the same meaning.” Section 45-2-101(33), MCA.
A person can knowingly use a fir earn and still be negligent by grossly deviating from the conduct of a reasonable person in a similar situation with regard to the results of his actions. See, State v. Pierce (1982), 199 Mont.57, 647 P.2d 847, 39 St.Rep. 1205. There is no conflict between these two statutes.
We do not find appellant’s due process arguments persuasive and much of what was said above applies to this contention also. We have previously held that the statute does not offend due process rights. State v. Davison (1980), Mont., 614 P.2d 489, 37 St.Rep. 1135. Appellant has cited no authority directly in point for his constitutional challenge. We decline to hold the enhancement statute unconstitutional on this basis.
With regard to the third issue, appellant contends that the facts indicate that defendant was under unusual and substantial duress within the meaning of section 46-18-222(3), MCA, an exception to the enhancement statute. Appellant argues that the jury verdict of mitigated deliberate homicide (which requires “extreme mental or emotional stress,” section 45-5-103, MCA) bears this out. Appellant also argues that the following facts indicate defendant was under the requisite amount of duress: defendant had just seen his friend shot, had been shot at himself, had had a gun *113 pointed in his face, and had wrestled the gun away from its owner.
The District Court found that although there was a “certain amount of duress” in this case, it was not “unusual or substantial,” triggering section 46-18-222, MCA. There was sufficient evidence in the record to support the District Court’s determination, and we uphold it here. The District Court made the following statement in this regard, addressed to the defendant:
“By your own admission you only intended to ‘wing’ him. You said, ‘He shot Dale so I shot him.’ And then the statement was made that you only shot to wound him. Then you make the statement, ‘Nobody sticks a gun in my face and gets away with it.’ And, ‘He deserves to die — he doesn’t deserve to live.’ ‘He killed my friend, so I killed him.’ I think that all of these statements, among others, indicate an intent to get even by the use of direct, physical force, a weapon.”
The defendant also had the presence of mind to temporarily incapacitate the owner of the gun by kicking him in the groin. Finally, defendant shot and killed a man running away from him who posed no immediate threat to him. These facts do not indicate unusual or substantial duress but rather a revengeful attitude on defendant’s part, seeking to make the killer “pay” for shooting his friend. There was no abuse of discretion by the District Court in so ruling. State v. Metz (1979), Mont., 604 P.2d 102, 36 St.Rep. 2261.
Next, appellant argues that the sentencing judge erred by admitting testimony which amounted to a retrial on the deliberate homicide charge and by failing to read the entire trial transcript. We will address the latter part of his contention first. The District Court judges of this state are burdened with heavy case loads as it is. We are loathe to hold that the failure of a District Court judge to read every word of a trial transcript mandates a reversal.
Nor do we find any error in the admission of testi *114 mony by the District Court. Such a hearing as was held here is required by section 46-18-223, MCA, which provides in part:
“Hearing to determine application of exceptions. (1) When the application of an exception provided for in 46-18-222 is an issue, the court shall grant the defendant a hearing prior to the imposition of sentence to determine the applicability of the exception.”
To determine whether the defendant was operating under substantial or unusual duress, the District Court must necessarily consider the facts leading up to the fatal shootings. This is especially true here since the trial judge was not the sentencing judge.
Appellant’s fifth issue involves whether the defendant was prejudiced with respect to a wrongful diagnosis by Montana State Prison officials on the presentence report. This point is raised because the psychiatrist who prepared the presentence report in 1979 (wherein he diagnosed the defendant as being antisocial) testified at the May 14, 1981 hearing that his diagnosis was inaccurate. Appellant claims error because the District Court considered this report in sentencing the defendant. Appellant refers us to the following language in the court’s order of May 27, 1981:
“The Court, having heard and considered oral arguments together with all of the testimony and evidence presented at the sentencing hearing, the various presentence reports, the diagnostic evaluation from the Montana State Prison and the transcripts, and being fully advised. . .” (Emphasis added.)
Appellant has cited no authority for this novel assertion, and we reject it. The sentencing judge heard the psychiatrist testify regarding his mistaken diagnosis, and there is no indication that he did not abide by this testimony. The mere reference to the report in the court’s order is not a sufficient ground for reversal.
Appellant’s final contention alleges error for the District Court’s sentence requiring the additional five years to run *115 consecutively, rather than concurrently. Although the present statute requires that the sentence run consecutively (section 46-18-221(4), MCA, supra), at the time this defendant was sentenced the court had discretion to require the enhanced sentence to run concurrently. However, this goes to the equity of the sentence rather than its legality and should be directed to the Sentence Review Board and not this Court, State v. Metz, supra. Appellant should take up these concerns with the appropriate authority.
Affirmed.
MR. JUSTICES HARRISON, WEBER, SHEEHY and MORRISON, concur.