No. 96-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROBERT P. GOULET,

Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District, In and for the County of Cascade, The Honorable Marc G. Buyske, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Lawrence A. LaFountain, Great Falls, Montana

For Respondents:

Honorable Joseph P. Mazurek, Attorney General; John Paulson, Assistant Attorney General, Helena, Montana

Julie Macek, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: March 13, 1997
Decided: May 30, 1997
Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Robert Paul Goulet was convicted in a jury trial in the Eighth Judicial District Court, Cascade County, of deliberate homicide, misdemeanor theft, and carrying a concealed weapon.  He appeals.  We affirm.
The issues are:
1.  Did the District Court err in refusing Goulet's offered jury instructions on mitigated deliberate homicide?

2. Did the court err in refusing Goulet's offered instructions on negligent homicide?

3. Did the court deny Goulet a fair trial by refusing to instruct the jury in regard to the mental states of "purposely," "knowingly," and "negligently"?

During the evening of April 27, 1995, Goulet and two other men, Henry Nelson and Edward Running Crane, visited several Great Falls, Montana bars to drink beer, gamble, and play pool. While they were walking down an alley on their way from one bar to another, Goulet asked Running Crane for a cigarette. Running Crane refused and pushed Goulet away.

Goulet took a butterfly knife from his pocket and "hit" Running Crane with it in the gut, after which he felt "stuff" on his hand. Goulet stabbed Running Crane again in the chest, and Running Crane fell to the ground. As Running Crane attempted to stand up, Goulet stabbed him in the back and shoulder. Running Crane again fell to the ground and stayed there.

Goulet searched through Running Crane's pockets, from which he took $25 or $30, some cigarettes, and some post office box keys. Nelson, who had observed the above events from a short distance away, walked up to Goulet and said, "I don't see what you're doing that for." Goulet replied, "I didn't like the faggot anyway." Leaving Running Crane lying in the alley, Nelson and Goulet went into a bar for another drink, then purchased cheeseburgers at a fast food restaurant and spent the rest of the night sleeping under a railroad trestle.

Running Crane's near-lifeless body was discovered in the alley shortly after 10:00 p.m. that night. He was transported to a hospital where he died three hours later, never having regained consciousness.

The fatal stab wound penetrated both ventricles of Running Crane's heart and the lower lobe of his liver. Another wound penetrated four and one-half inches into his back and then into his right lung. Running Crane also had two more knife wounds in his lower chest and abdomen, with bruising on his abdomen. The pathologist who conducted the autopsy testified at trial that this bruising indicated that the knife "was probably thrust in up to the hilt with considerable force." Finally, Running Crane had a cut on his eyebrow which penetrated to the bone. The pathologist found no defensive wounds on Running Crane's body.

Bar employees identified Nelson and Goulet as the last persons seen with Running Crane on the evening of the homicide, as did Running Crane's cousins, who had given the three men a ride earlier that evening. When Nelson was questioned, he made a detailed statement describing the crimes. He also took police officers to the rooftop where he and Goulet had disposed of the knife, which was then recovered.

Nelson entered a plea agreement and was deposed. Shortly thereafter he fled and was unavailable to testify at trial. His deposition testimony was read into evidence at trial.

Goulet also gave a statement to detectives investigating Running Crane's death. He admitted stabbing Running Crane "about six times" when Running Crane became "obnoxious" after Goulet asked him for a cigarette. Goulet explained that he was intoxicated and was attempting only to intimidate Running Crane and not to hurt him.

A jury found Goulet guilty of deliberate homicide, misdemeanor theft, and carrying a concealed weapon. He was sentenced to serve seventy-five years in the state prison with twenty-five years suspended, plus concurrent terms of six months for the theft and concealed weapon charges.

## Standard of Review

The standard of review for claims of instructional error in a criminal case is whether the jury instructions, reviewed as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Brandon (1994), 264 Mont. 231, 237, 870 P.2d 734, 737. A district court is given broad discretion in formulating jury instructions. State v. Ross (1995), 269 Mont. 347, 358, 889 P.2d 161, 167. To constitute reversible error, the district court's ruling on jury instructions must prejudicially affect the defendant's substantial rights. State v. Bradley (1995), 269 Mont. 392, 395, 889 P.2d 1167, 1168. While a defendant is entitled to have instructions on any theory of the case

supported by the record, he is not entitled to an instruction concerning every nuance of his theory or argument. State v. Webb (1992), 252 Mont. 248, 253, 828 P.2d 1351, 1354.

### Issue 1

Did the District Court err in refusing Goulet's offered jury instructions on mitigated deliberate homicide?

A person commits mitigated deliberate homicide if he commits a deliberate homicide "but does so under the influence of extreme mental or emotional distress for which there is reasonable explanation or excuse." Section 45-5-103(1), MCA. Mitigated deliberate homicide is an affirmative defense to a charge of deliberate homicide and must be proved by the defendant by a preponderance of the evidence. Section 45-5-103(2), MCA.

The District Court refused Goulet's proposed instructions on mitigated deliberate homicide based upon its determination that there was insufficient evidence in the record to support a jury finding of mitigation. The court stated:

The element that is missing is that there must be evidence of extreme emotional or mental duress, and even though that must be judged by a-- from the viewpoint of a reasonable person, the Court concludes there is simply no evidence to support a jury finding that that--that that situation existed.

This Court has held that simply being angry or intoxicated does not support a finding of extreme mental or emotional distress for which there is a reasonable explanation or excuse. State v. Williams (1993), 262 Mont. 530, 541, 866 P.2d 1099, 1106.

We have reviewed the record. Goulet did not present any evidence at trial which could be argued as evidence that he was under mental or emotional distress, other than that he was intoxicated and that he and Running Crane had gotten into an argument over a cigarette. Goulet's own admissions concerning his conduct before, during, and after the assault provide scant support for a finding of any mental or emotional distress, much less extreme mental or emotional distress. The evidence fully supports the court's determination that the altercation over a cigarette could not mitigate Goulet's violent killing of an unarmed man.

Because the record would not support a jury finding of mitigation due to extreme mental or emotional distress, we conclude that the District Court did not abuse its discretion in refusing the offered jury instructions on mitigated deliberate homicide.

### Issue 2

Did the court err in refusing Goulet's offered instructions on negligent homicide?

Goulet contends that because mental state must be inferred and the mental states of negligently, knowingly, and purposely are on a continuum, he was entitled to a jury instruction on the mental state of "negligently." He argues that he was entitled to a jury instruction on negligent homicide as a lesser included offense of deliberate homicide.

A criminal defendant is entitled to a requested lesser included offense instruction when, based upon the evidence, the jury rationally could be warranted in convicting on the lesser offense and acquitting on the greater offense. See 46-16-607, MCA. In this case, the only evidence remotely arguable as evidence of negligence was Goulet's statement that as he repeatedly stabbed Running Crane in the stomach, chest, and back, he was hoping that he was not seriously hurting him. In light of Goulet's own admissions, Nelson's testimony, and the evidence of the severity of Running Crane's injuries, this bare assertion by Goulet deserves little credence. We conclude that the District Court was within its discretion in ruling that the evidence of negligence was insufficient to allow the jury rationally to convict Goulet of the lesser offense and acquit him of the greater.

We hold that the District Court did not abuse its discretion in refusing Goulet's offered instructions on negligent homicide.

### Issue 3

Did the court deny Goulet a fair trial by refusing to instruct the jury in regard to the mental states of "purposely," "knowingly," and "negligently"?

Goulet's statement of this issue is somewhat misleading because the District Court

instructed the jury on the mental states of "purposely" and "knowingly." Goulet argues that the mental states of "purposely," "knowingly," and "negligently" are on a continuum and that the jury should therefore have been given instructions on all of them.

Goulet cites Martin v. Ohio (1987), 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267, in support of his contentions that the jury should have been instructed on negligent homicide and that failure to do so deprived him of due process of law. In Martin, the defendant was charged, under Ohio law, with aggravated murder. The issue on appeal was whether the jury was properly instructed that the defendant bore the burden of proving self-defense. The Court held that the Ohio practice of requiring the defendant to prove self-defense was constitutional. Martin, 480 U.S. at 236. Due process as discussed in Martin does not require the giving of a lesser included offense instruction which is not supported by the evidence. Martin does not support Goulet's argument.

Goulet proposed an instruction which stated, "[a] person's statements can be considered in determining the existence of a person's mental state which is an element of an offense." He offered no citation to authority in support of that instruction, nor for another he offered that, "[a] person's belief that he needs to defend himself can be considered in determining the existence of a person's mental state which is an element of an offense."

Goulet also proposed a jury instruction which stated, "[a] person can knowingly use a knife and still be negligent with regard to the results of his actions." Goulet provided no citation to appropriate authority in support of this instruction. Contrary to his claim, State v. Hubbard (1982), 200 Mont. 106, 649 P.2d 1331, does not stand for the proposition represented in the proposed instruction. In Hubbard, this Court held that, "[a] person can knowingly use a firearm and still be negligent by grossly deviating from the conduct of a reasonable person in a similar situation with regard to the results of his actions." Hubbard, 649 P.2d at 1334.

The District Court refused Goulet's proposed instruction on the definition of "negligently" for the same reasons that it refused the proposed instructions on the offense of negligent homicide. Standing apart from instructions on the offense of negligent homicide, an instruction on the definition of "negligently" would have no meaning or significance. The jury need not be instructed on a mental state unless that mental state is an element of an offense which the jury may properly consider. Contrary to Goulet's assertions, he was not entitled, as a matter of law, to a jury instruction on "negligently."

For the reasons discussed above, we hold that the District Court did not abuse its discretion in refusing Goulet's proposed instructions on negligent homicide, including the definition of "negligently." We further hold that Goulet's due process rights were not violated by the District Court's rejection of the above offered instructions.

Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ WILLIAM E. HUNT, SR.

Justice Terry N. Trieweiler dissenting in part and specially concurring in part.

I dissent from the majority's conclusion that the District Court did not abuse its discretion when it refused the defendant's offered instruction on mitigated deliberate homicide.

Section 46-16-607(2), MCA, provides that "[a] lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense."

Section 46-1-202(8)(c), MCA, defines "included offense" as an offense that

"differs from the offense charged only in the respect that . . . a lesser kind of culpability suffices to establish its commission."

Mitigated deliberate homicide, as defined in 45-5-103, MCA, is a lesser included offense of deliberate homicide, as defined at 45-5-102(1)(a), MCA.

The majority opinion states that Goulet did not present any evidence from which it could be found that he was under mental or emotional distress at the time he stabbed Running Crane. However, Goulet did not need to present evidence to that effect; the State did so, and the majority opinion's summary of the evidence is incomplete.

Dana Ingersoll, a detective for the City of Great Falls, testified that he interviewed Goulet shortly after Running Crane's death and learned from him that, after leaving the Sailboat Lounge, Goulet and Running Crane got into a shoving match over a cigarette. Goulet advised the officer that Running Crane first pushed him and then swung at and hit him. He testified that when he swung at Running Crane, he missed him. They apparently both fell to the ground, and he then pulled a knife from his pocket to intimidate Running Crane. Goulet then told the officer that he hit Running Crane with the knife, but that it did not phase him. According to his statement, Running Crane came toward him aggressively again. That is when he first stabbed Running Crane. Goulet also told Officer Ingersoll that he was intoxicated at the time and that his intention, when first hitting Running Crane with the knife, was to get him to leave him alone.

Under these circumstances, I conclude that there was sufficient evidence for a jury to find that Goulet acted under extreme mental stress at the time that he inflicted the injuries on Running Crane which caused Running Crane's death and, therefore, that the jury should have been given an instruction on mitigated deliberate homicide, as well as the instruction on deliberate homicide, so that it had the appropriate options when considering its verdict.

For these reasons, I dissent from the majority's conclusion to Issue 1 that the District Court did not abuse its discretion by refusing Goulet's proffered instruction on mitigated deliberate homicide.

I concur with the remainder of the majority opinion.

/S/ TERRY N. TRIEWEILER

</HTML