No. 99-368

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 273

STATE OF MONTANA,

Plaintiff and Respondent,

v..

ALAN FUQUA,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Milton Datsopoulos; Datsopoulos, MacDonald & Lind,

Missoula, Montana

Larry Nistler, Nistler Law Offices, Polson, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Pamela P. Collins,

Assistant Attorney General, Helena, Montana

Kim Christopher, Lake County Attorney; Mitchell A. Young,

Deputy Lake County, Polson, Montana

Submitted on Briefs: August 3, 2000

Decided: October 30, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Alan Fuqua (Fuqua) was charged in the Twentieth Judicial District Court, Lake County, with assault on a police officer, a felony in violation of § 45-5-210(1)(b), MCA. Fuqua was tried by a jury and convicted. He appeals from that conviction. We affirm the judgment of the District Court.

¶2 Officer Donald Bell (Bell) of the Flathead Tribal Police in Pablo, Montana, was dispatched to respond to a suicide call on July 4, 1998. Bell recognized the voice as belonging to Fuqua. Fuqua told Bell his "back was up against the wall" and wanted Bell to talk with him at his home. Bell inquired whether Fuqua had any firearms in his home and Fuqua advised him that he had a longbow. Bell told Fuqua to put the bow out on his front porch and Fuqua agreed to do that.

¶3 Officer Bell drove to Fuqua's trailer house and parked some distance away. As he approached Fuqua's front door, he saw Fuqua sitting at his kitchen table, talking on the phone. Fuqua then saw Bell and hung up the phone. Bell could see that Fuqua did not have anything in his hands at that point. Fuqua was then out of Bell's sight for about 25 seconds as Bell continued towards the door. Bell did not see the bow on the front porch. Bell called out, "Alan, where are you?" to which Fuqua responded, "Don, come in." The front door was open. Bell placed his hands on both sides of the door frame with one foot on the ground and the other atop the cinder block step. He then leaned inside with his shoulder close to the door frame and his head about level with the doorknob. When he looked

inside, Bell saw Fuqua standing in the kitchen holding the bow with an arrow in a fully drawn position. Since it appeared to Bell that Fuqua was aiming the arrow at him, Bell pulled his head back. He heard a "pop" at the door, and observed an arrow stuck in the middle of the door above the doorknob. Bell believed that the arrow would have hit his head if he had not moved when he did.

¶4 Officer Bell drew his weapon and peeked inside the trailer at a different angle. Although Fuqua held the bow at his side, there was no arrow. Bell entered the trailer, put his weapon in its holster and placed Fuqua in a wrist lock. Bell wrestled the bow from Fuqua and handcuffed him.

¶5 At trial Fuqua testified on his own behalf. He stated that he had not seen Bell at the door when he released the arrow and that he shot the arrow into the door to reassure Bell that the arrow had been fired and he was then unarmed.

¶6 Fuqua raises the following two issues on appeal:

¶7 1.   Whether the District Court erred in refusing to instruct the jury on Fuqua's theory of defense.

¶8 2.   Whether § 45-5-210, MCA, violates Article II, Section 17 of the Montana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

¶9 We review jury instructions in criminal cases to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Leyba (1996), 276 Mont. 45, 51, 915 P.2d 794, 797. To constitute reversible error, the District Court's ruling on jury instructions must prejudicially affect the defendant's substantial rights. State v. Goulet (1997), 283 Mont. 38, 41, 938 P.2d 1330, 1332. While a defendant is entitled to have instructions on his theory of the case, he is not entitled to an instruction concerning every nuance of his argument. State v. Gonzales (1996), 278 Mont. 525, 531, 926 P.2d 705, 709.

I

¶10 At trial, Fuqua admitted that his conduct was wrong. His sole defense was that he acted negligently as opposed to purposely or knowingly. On appeal he argues that the District Court, in ruling that he was not entitled to a jury instruction defining a negligent

mental state, precluded him from articulating his defense, and effectively gutted his fundamental right to present a defense. He submits that since his theory that he acted negligently was supported by considerable evidence, he was entitled to an instruction on the legal definition of negligence.

¶11 We need not address whether there was sufficient evidence to support such an instruction since the legal issue presented is whether, even assuming there was evidence of negligence, an instruction defining negligence was appropriate in the context of a charge of assault on a police officer.

¶12 We addressed a similar contention in *Goulet*. On appeal from a conviction of deliberate homicide, Goulet argued that the district court erred in refusing to instruct regarding negligent homicide and the statutory definition of "negligently." In upholding the district court's refusal of Goulet's "stand alone" instruction on the definition of negligently, we stated:

Standing apart from instructions on the offense of negligent homicide, an instruction on the definition of "negligently" would have no meaning or significance. The jury need not be instructed on a mental state unless that mental state is an element of an offense which the jury may properly consider. Contrary to Goulet's assertions, he was not entitled, as a matter of law, to a jury instruction on "negligently."

*Goulet, 283 Mont. at 44, 938 P.2d at 1334.*

¶13 Fuqua cites State v. Beavers, 1999 Mont. 260, ¶ 23, 296, Mont. 340, ¶ 23, 987 P.2d 371, ¶ 23, for the proposition that a defendant has a right to an instruction covering any and every issue or theory having support in the evidence. On appeal Beavers argued that even if reckless driving were not an included offense of criminal endangerment, the court should have instructed on reckless driving as an alternative theory. *Beavers*, ¶ 38. This Court recognized that although a defendant is entitled to an instruction on any lesser included offense that has support in the evidence, "[t]he rule of law we apply to alternative offenses is that of prosecutorial discretion." *Beavers*, ¶ 39. "Where the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." State v. Schmalz, 1998 MT 210, ¶ 9, 290 Mont. 420, ¶ 9, 964 P.2d 763, ¶ 9. If the prosecutor has charged a crime which requires proof of a knowing or purposeful mental state, the court is not required to instruct on an alternative mental state of negligence. As we held in *Goulet*, the court need not instruct on a mental state which is

not an element of the offense charged. *Goulet*, 283 Mont. at 44, 938 P.2d at 1334.

¶14 We hold that the District Court did not err in refusing to give Fuqua's proposed stand-alone jury instruction defining "negligently."

Was Fuqua prevented from articulating his theory of defense?

¶15 After the District Court refused Fuqua's requested jury instruction on negligence, he asked the court whether its ruling would limit or restrict the defense from arguing that his actions were committed with a negligent mental state as opposed to a purposeful or knowing mental state. The court replied, "[y]ou can certainly argue that it was accidental or negligent discharge of [the arrow], but in arguing that the State has failed to prove knowing or purposely." Upon further inquiry from Fuqua, the court explained that he could argue that his conduct was mistaken or negligent, but that he could not provide the jury with a statutory definition of negligence.

¶16 It is apparent from a review of the record that Fuqua did in fact argue to the jury that his actions were negligent-not knowing or purposeful.

> Look, these are the elements the State has to prove. The Court has already outlined them and I've gone over them generally but here it goes. The mental state; purposely or knowingly, beyond a reasonable doubt.
>
> . . . .
>
> If any one . . . of those are not proved to your satisfaction beyond a reasonable doubt, your verdict is and must be not guilty. That's the instruction from the Court; all elements, each and every one, beyond a reasonable doubt.
>
> Now in hindsight some of you may say, "Boy, I still don't condone what that fellow did. Maybe it was a big mistake. Maybe it was negligence. Maybe he was upset and not looking for the officer. Maybe he's suicidal. Maybe all of these things contributed to it." Common sense tells you there is a huge difference between purposely or knowingly and doing things negligently and/or without proper care or concern for what might happen.
>
> "Purposely or knowingly." You've got the definitions. You can figure out what that means. It's an intended act. It's not an accident. It's not a negligent act.

. . . .

What Alan Fuqua did was grossly negligent. Almost as grossly negligent as what Officer Bell did. Who caused what happened? Can you say

beyond a reasonable doubt that Alan Fuqua caused what happened?

. . . .

I've asked you to consider yourself in those shoes. Now it's tough to consider yourself in as desperate situation as he was that day; suicidal, distraught, calling for help from his friend. But unless you find beyond a reasonable doubt that he did each of those things in that fashion, you can't find him guilty. What he did in hindsight was very negligent. He said he wished he hadn't done it.

Do you remember one thing that I recall from Officer Bell's statement? He told Officer Bell, "I didn't mean to hurt you. It would be like shooting my brother."

. . . .

What Alan Fuqua did was wrong. It wasn't deliberate. It wasn't intentional. It was a mistake. It was poor judgment. But he did not intend to hurt the officer, and he didn't fire the arrow at a spot that would have hit the officer.

I would ask you to find him not guilty, not because you agree with what he did but because the State cannot prove beyond a reasonable doubt that he did what he's charged with.

¶17 Clearly Fuqua was not prevented from arguing that he acted negligently rather than purposely or knowingly. Rather, he was admonished that it was the court's prerogative, not his, to instruct the jury on the relevant law in the context of the crime charged.

## II

¶18 Does § 45-5-210(4), MCA, violate Article II, Section 17 of the Montana Constitution and the Fifth and Fourteenth Amendments to the United States Constitution?

¶19 Section 45-5-210(4), MCA, provides as follows:

(4) Criminal endangerment, negligent endangerment, and assault, as defined in 45-5-201, are not included as offenses of assault on a peace officer or judicial officer.

¶20 Fuqua contends that a statute which eliminates consideration of lesser-included offenses is unconstitutional both on its face and as applied. Fuqua's argument as to the unconstitutionality of § 45-5-210(4), MCA, is premised upon an assumption that, but for § 45-5-210(4), MCA, the offense of negligent endangerment would be considered a lesser-included offense of assault on a peace officer under the provisions of § 46-1-202(8), MCA.

¶21 The threshold question then is whether negligent endangerment is a lesser-included offense of assault on a peace officer under the provisions of § 46-1-202(8), MCA. That statute defines an "included offense" as an offense that:

(a)  is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(b)  consists of an attempt to commit the offense charged or to commit an offense otherwise included in the offense charged; or

(c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

Section 46-1-202(8), MCA.

¶22 Subsection (a) requires that negligent endangerment be established by proof of the same or less than all the facts required to establish commission of assault on a peace officer. We have consistently stated that the term " 'facts,' refers to the statutory elements of the offenses, not the individual facts of the case." *Beavers*, ¶ 30. Assault on a peace officer requires that a defendant knowingly or purposely cause: (1) bodily injury to a peace officer (with or without a weapon); (2) serious bodily injury to a peace officer; or (3) reasonable apprehension of serious bodily injury in a peace officer by use of a weapon. Section 45-5-210(1), MCA. Negligent endangerment, on the other hand, requires that the defendant negligently: (1) create a substantial risk of death or serious bodily injury; (2) on

another. Section 45-5-208, MCA. Since negligent endangerment requires negligent conduct rather than purposeful conduct, and risk rather than injury or apprehension, it cannot be said that it is established by proof of the "same or less than all" of the facts required to prove assault on a peace officer.

¶23 In order to satisfy subsection (b) of § 46-1-202(8), MCA, negligent endangerment would have to consist of an attempt to commit assault on a peace officer. That subsection is not applicable to this analysis.

¶24 In interpreting subsection (c), we have held that "an offense is a lesser included offense if it differs from the one charged *only* by way of a less serious injury *or* a less serious risk *or* a lesser kind of culpability." State v. Castle (1997), 285 Mont. 363, 368, 948 P.2d 688, 691. Thus negligent endangerment may differ from assault on a peace officer in one, and only one of the above ways, in order to be considered a lesser included offense. State v. Fisch (1994), 266 Mont. 520, 523, 881 P.2d 626, 628.

¶25 Negligent endangerment differs from assault on a peace officer in more than one way. It differs in that it requires a lesser kind of culpability; negligent conduct as opposed to knowing or purposeful conduct. Negligent endangerment also differs in that it requires conduct creating a substantial risk of death or serious bodily injury while assault on a peace officer requires bodily injury or reasonable apprehension of serious bodily injury. Thus, negligent endangerment is not a lesser included offense of assault on a peace officer under any of the three provisions of § 46-1-202(8), MCA.

¶26 Having concluded that negligent endangerment is not a lesser included offense under § 46-1-202(8), MCA, we do not need to address the question of whether § 45-5-210(4), MCA (which specifically eliminates criminal endangerment, negligent endangerment and assault as lesser included offenses of assault on a peace officer), is constitutional. The question of whether the legislature can specifically eliminate consideration of an offense as a lesser-included offense, when it would otherwise fit the definition of a lesser-included offense under § 46-1-202(8), MCA, is a question left for another day.

¶27 The District Court did not err in refusing to instruct the jury on negligent endangerment as a lesser included offense. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY