**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000542
26-FEB-2021
10:00 AM
Dkt. 67 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

---O0O---


STATE OF HAWAI‘I, Plaintiff-Appellee,
v.
RANDAL VALOROSO,
also known as Randal J. Valoroso,
Defendant-Appellant


NO. CAAP-19-0000542


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-18-0000480)


FEBRUARY 26, 2021


GINOZA, C.J., AND HIRAOKA AND WADSWORTH, JJ.


OPINION OF THE COURT BY WADSWORTH, J.

Defendant-Appellant Randal Valoroso, also known as
Randal J. Valoroso (**Valoroso**), appeals from the "Judgment;
Conviction and Probation Sentence; Terms and Conditions of
Probation; Notice of Entry" (**Judgment**), entered on May 29, 2019,
in the Circuit Court of the Second Circuit (**Circuit Court**).[1]
After a jury trial, Valoroso was convicted of the lesser-included
offense of Assault in the Second Degree (**Assault Two**), in
violation of Hawaii Revised Statutes (**HRS**) § 707-711(1)(a) (Supp.

---

[1] The Honorable Richard T. Bissen, Jr. presided.

2017).[2]

On appeal, Valoroso contends that the Circuit Court erred in failing to instruct the jury on "negligence as a defense to [Valoroso's] state of mind."

We affirm the Judgment and hold that Valoroso was not entitled to a jury instruction on negligence, where the negligent state of mind was not applicable to the elements of the charged offense, the included offenses, or Valoroso's defenses, and the jury was properly instructed as to the applicable states of mind for the charged offense and the included offenses.

## I.   Background

On June 28, 2018, Plaintiff-Appellee State of Hawai'i (**State**) filed a Felony Information and Non-Felony Complaint (**Complaint**) against Valoroso.  The State alleged, among other things, that on or about May 9, 2018, Valoroso intentionally or knowingly caused serious bodily injury to Tracy Taylor (**Taylor**), thereby committing the offense of Assault in the First Degree (**Assault One**), in violation of HRS § 707-710(1) (2014).[3]  The Complaint stemmed from an incident at Taylor's residence in Makawao, Maui (**Property**), in which Taylor suffered open fractures of her left tibia and fibula and a moderately severe soft tissue wound on her lower left leg after allegedly being pushed by Valoroso.

## A.   Trial

Trial commenced on February 25, 2019.  At that time, Taylor's son, Christopher Gray (**Gray**), testified in part as follows:  On May 9, 2018, Valoroso parked his pickup truck and trailer in the front yard of the Property, about ten feet away

---

[2]    HRS § 707-711 provides, in relevant part:

> (1) A person commits the offense of assault in the second degree if:
>
> > (a)   The person intentionally, knowingly, or recklessly causes substantial bodily injury to another[.]

[3]    Two other counts were dismissed with prejudice before trial and are not at issue in this appeal.

from the front steps, and began staring at Gray. At the time of the incident, Gray was temporarily staying with Taylor. Gray said to Valoroso, "You need to move your truck out of my . . . mother's yard." Valoroso, however, got out of his truck and yelled at Gray, "[W]hat's the matter?" In response, Gray yelled, "[Y]ou need to move your . . . F'ing truck out of my mom's driveway." The situation "escalated into a physical altercation [between Valoroso and Gray] really like almost immediately." The fight "calmed down" and Taylor "comes out of the house." According to Gray, Taylor asked Valoroso, "[W]ho are you?" "[W]hat do you want?" Valoroso responded: "I am the owner of this -- this is my land. I'm the son-in-law, and you have to do what I say. You-all are losers and you-all need to leave." Taylor told Valoroso, "[Y]ou need to leave," and he responded, "[N]ot until I'm finished with him," referring to Gray. Taylor then told Gray to head inside the house. Gray began heading up the stairs when he saw Valoroso grab a 12- to 14-inch-long metal object from the bed of his truck. Valoroso then "charg[ed]" toward Gray.

Gray further testified that Taylor put both her hands up and yelled, "Stop. Stop." Gray saw Valoroso "shove[] [Taylor] up against the house[,]" after which, "[s]he slid down kind of onto -- and fell on her behind." Gray also stated that he saw Valoroso "jab[] whatever he had in his hand into my mom's leg and even kind of dragged her a little bit."[4]

At trial, Taylor testified in part to the following: During the mid-afternoon of May 9, 2018, Taylor heard "a lot of yelling" outside of her house, went outside to investigate, and saw Gray "with his back up against the side of the house" and Valoroso "in his face." Gray "had some blood coming down his face." Taylor asked, "[W]hat's happening? . . . [a]nd [Valoroso] started saying that he owned this land, that this property was his." Taylor then asked, "[A]nd who are you?" and Valoroso responded, "I am the son-in-law." Taylor then said, "[M]y

---

[4] In subsequent testimony, Dr. Kenneth Smith, who treated Taylor after she was brought to the hospital emergency room, stated that he did not see any evidence, in his opinion, that Taylor was stabbed by any object.

landlord isn't home; you need to leave until he gets home."
According to Taylor, "[Valoroso] said, not until I'm finished
with him, and he pointed at [Gray].  He said, because you losers
need to leave."  Taylor then "told [Gray] to get in the house."
Taylor next saw Valoroso "going back to his truck, [and]
rummaging around[.]"

Taylor continued her testimony as follows:

> I was watching him at the truck, and he starts lunging
> toward me.  And I put my arms up and said, stop, stop.  And
> he kept coming, and he just lunged into me. . . .
>
> And then all at once, it's like . . . he starts
> pushing me someway under him.  I don't know how he did it,
> but I'm someway under and I start skidding along that
> sidewalk on my side.

In further describing the incident, Taylor stated that Valoroso
made contact with "[m]y upper body . . . as I'm pushed back into
the house.  I was backed up into the house, like – like boom, and
then – and I'm off balance here now, and my – my leg goes up, and
I'm going under . . . ."  After Taylor hit the ground, she had a
"pressure feeling" in her leg.

The defense denied this account of the incident.  The
defense's theory of the case was that Taylor fell from the stairs
to the cement below while trying to intervene in the fight
between Valoroso and Gray, and that Valoroso did not cause
Taylor's injuries.

In support of this theory, the defense called two
witnesses at trial.  The defense first recalled Maui Police
Department Officer Max Kincaid (**Officer Kincaid**), who had
responded to the Property on the day of the incident and had
testified during the State's case.  Officer Kincaid was
questioned about alleged inconsistencies between Taylor's
testimony and her statement in Officer Kincaid's report.  Officer
Kincaid testified, among other things, that he did not recall
Taylor telling him that Valoroso had "retriev[ed] a weapon from
the trailer," and that Taylor did not mention "anything about Mr.
Valoroso stabbing her with a weapon[.]"

Witness Serena Martelles (**Martelles**), who lived across
the street from the Property, also testified for the defense.
She stated that on the day of the incident, she heard a loud

commotion while sitting at her dining table.  She went to her living room window and saw Gray, whom she referred to as "the haole boy," and another person, whom she referred to as "the local boy," yelling at each other; she did not see anything physical at that point.  Martelles went back to her dining table for a few minutes, and then to the kitchen sink, where she could still hear yelling.  Martelles returned to the window and saw an "old lady come outside."  The "old lady" was "telling the local boy to stop already, enough[,]" and her hands were up.  Martelles turned away for less than a minute, turned back, and saw Taylor on the ground screaming.  Martelles did not see "the local boy" physically touch Taylor and was not able to identify Valoroso in the court room.

During closing arguments to the jury, defense counsel stated in relevant part:

> Mr. Valoroso is innocent of this.  He did not charge at Ms. Taylor.  He did not slam her against the wall.  He did not drag her underneath him, drag her against the ground.  He did not stab her.  And most importantly, he did not cause this injury to her, this horrific injury.

## B. Jury Instructions

On February 25, 2019, Valoroso filed proposed jury instructions, which included a request that Hawaiʻi Standard Jury Instruction Criminal (**HAWJIC**) No. 6.05, entitled "State of Mind - Negligently," be given to the jury.[5]  However, on February 26,

-----

[5]     HAWJIC No. 6.05 states:

**STATE OF MIND -- NEGLIGENTLY**

A person acts negligently with respect to his conduct when he should be aware of a substantial and unjustifiable risk taken that the person's conduct is of the specified nature.

A person acts negligently with respect to attendant circumstances when he should be aware of a substantial and unjustifiable risk that such circumstances exist.

A person acts negligently with respect to a result of his conduct when he should be aware of a substantial and unjustifiable risk that his conduct will cause such a result.

A risk is substantial and unjustifiable if the person's failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a

(continued...)

2019, during the Circuit Court's conference with the parties to settle jury instructions, HAWJIC No. 6.05 was not discussed, and defense counsel made no request to include that instruction or any other instruction regarding negligence.  During the conference, the Circuit Court noted that it would give HAWJIC Nos. 6.02, 6.03, and 6.04, which define, respectively, the state of mind in acting "intentionally," "knowingly," and "recklessly." The Circuit Court did not mention HAWJIC No. 6.05 or any other instruction regarding negligence, and defense counsel did not object.  Near the end of the conference, after the State's proposed special instructions were discussed, the court asked, "Does the defense have any instructions to submit?"  Defense counsel responded, "Defense does not."  After discussing all of the instructions that would be given, as well as the jury form, the Court asked counsel, "Anything else for – with regard to jury instructions or verdict form?"  Defense counsel responded, "No, your Honor."

The next day, after the close of evidence, the jury instructions were read to the jury.  The court instructed the jury on, among other things, the elements of Assault One and the included offenses of Assault Two, in two alternatives,[6] and

---

[5]  (...continued)
law-abiding person would observe in the same situation.

[6]  The jury was instructed as follows regarding Assault Two:

Instruction [Number] 19:  If and only if you find the defendant not guilty of assault in the first degree, or you are unable to reach a unanimous verdict as to this offense, then you must consider whether the defendant is guilty of the included offense of assault in the second degree.

This offense can be committed in either of two ways. With respect to the first alternative, a person commits the offense of assault in the second degree if he intentionally, knowingly, or recklessly causes substantial bodily injury to another person.

With respect to the second alternative, a person commits the offense of assault in the second degree if he recklessly causes serious bodily injury to another person.

In the first alternative, there are two material elements of the offense of assault in the second degree, each of which the prosecution must prove beyond a reasonable doubt.

(continued...)

6

Assault in the Third Degree (**Assault Three**).  The court also instructed the jury on the statutory definitions of "intentionally," "knowingly," and "recklessly."[7]  See HRS

_____

[6]  (...continued)
These two elements are:

1. That on or about May 9, 2018, in the County of Maui, State of Hawaii, the defendant caused substantial bodily injury to Tracy Taylor; and

2. That the defendant did so intentionally, knowingly, or recklessly.

In the second alternative, there are two material elements of the offense of assault in the second degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are:

1. That on or about May 9, 2018, in the County of Maui, State of Hawaii, the defendant caused serious bodily injury to Tracy Taylor; and

2. That the defendant did so recklessly.

You are to consider each alternative of assault in the second degree separately.  The fact you may find that one of the alternatives has or has not been proved beyond a reasonable doubt does not mean that you must reach the same decision with respect to the other alternative.

In order to find the offense of assault in the second degree has been proved, you must unanimously agree that the same alternative or both of the alternatives have been proved beyond a reasonable doubt.

Proof beyond a reasonable doubt of . . . one or both of the alternatives will result in the conviction of only one offense of assault in the second degree.

(Underscoring added.)

[7]  Instruction Numbers 17 (intentionally), 18 (knowingly), and 20 (recklessly) were provided to the jury as follows:

Instruction [Number] 17: A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct.

A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist.

A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

Instruction Number 18: A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

(continued...)

§ 702-206; HAWJIC 6.02, 6.03, and 6.04.

Following closing arguments, the Circuit Court concluded reading the instructions to the jury and then asked both parties if there were any objections to the court's reading of the jury instructions. Defense counsel stated, "No objection."

After the jury began deliberations, the Circuit Court reconvened on the record without the jury present. The court noted that there had been a question from the jury and an agreed upon response,[8] and that after the response was provided, the jury informed the court that it had reached a verdict. The verdict had not been read.

At that point, defense counsel first raised the issue that Valoroso's proposed jury instructions had included "a 6.05

_____

[7] (...continued)

A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

. . . .

Instruction Number 20: A person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature.

A person acts recklessly with respect to attendant circumstances when he consciously disregards a substantial risk -- a substantial and unjustifiable risk that such circumstances exist.

A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.

A risk is substantial and unjustifiable if, considering the nature and purpose of the person's conduct and the circumstances known to him, the disregard of the risk involves a gross deviation from the standard of conduct that a law abiding person would observe in the same situation.

(Underscoring added.)

[8] The jury had asked the following question: "If we believe the injury to be substantial versus serious, are we able to find the defendant guilty to the second degree, first alternative, omitting the words knowingly and intentionally?" The agreed upon response provided to the jury was: "Please refer to Instructions 17, 18, 19, and 20." See supra notes 6-7.

state of mind [instruction] for negligent[ly], and it never made it onto the fly sheet for the settling of the jury instructions." Defense counsel continued: "I did not catch it during the settling of jury instructions, and it only just came back to me at this point." The Circuit Court then heard argument from defense counsel, which included the following exchange:

> THE COURT: . . . . Which legal defense being offered by the defen[se] would have required the instruction of negligence?
>
> [DEFENSE COUNSEL]: That this was not proved beyond a reasonable doubt, that the defendant's -- Mr. Valoroso's state of mind did not rise to the level of intentional, knowing, or reckless that is --
>
> THE COURT: So you would have -- your defense would have been that he acted negligently?
>
> [DEFENSE COUNSEL]: Yes. That's part of -- that's all blanketed in this.
>
> THE COURT: Except I heard all 25 minutes of your closing argument, and not once did you argue negligence.
>
> [DEFENSE COUNSEL]: I didn't argue --
>
> THE COURT: You argued -- you argued that it wasn't him.
>
> [DEFENSE COUNSEL]: Right. I didn't argue any state of mind. . . .
>
> . . . .
>
> THE COURT: At what point in time would you have used -- would you have argued negligence when throughout -- and by the way, you gave an outstanding closing argument, Counsel.
>
> That -- at what time during that would you have said to the jury, I want you to focus on the negligence instruction?
>
> [DEFENSE COUNSEL]: I would not have, your Honor.
>
> THE COURT: It never came up?
>
> [DEFENSE COUNSEL]: No, I would not have -- I would not have done that. I would not have --
>
> THE COURT: Because that wasn't your theory.
>
> [DEFENSE COUNSEL]: No, your Honor.

The Circuit Court also discussed with defense counsel the applicable states of mind of the charged and included offenses, as follows:

> THE COURT: Let me ask this question: Why did you even propose [the negligence instruction]? Why did you propose it?

9

[DEFENSE COUNSEL]: Well, in the event that the jury is potentially coming back finding that, you know, he has responsibility in this.

THE COURT: Right. So under what definition would you have asked the Court to -- to put it in there when none of the offenses that were being charged, even the included offenses, had that state of mind?

[DEFENSE COUNSEL]: Well, then that's a defense --

THE COURT: The lowest state of mind was reckless.

[DEFENSE COUNSEL]: And then that's a defense right there.

THE COURT: That's a defense?

[DEFENSE COUNSEL]: Right there because --

THE COURT: That you did not argue?

[DEFENSE COUNSEL]: No, that is a defense right there, that if we have every -- for the -- you know, the charge as it is, the lesser's that's included, all of them have defined states of mind that must be met.

THE COURT: Right.

[DEFENSE COUNSEL]: And the negligence standard is a defense at this point.

THE COURT: Okay. So what are you asking the Court to do? (Inaudible.)

[DEFENSE COUNSEL]: Yes, your Honor. Based upon the -- you know, this not making it into the instructions, not being discussed, defense is moving for a mistrial.

The State opposed Valoroso's motion for a mistrial, and the Circuit Court denied the motion.

## C. Conviction and Sentence

The jury found Valoroso guilty of the included offense of Assault Two "in the first alternative." See supra note 6. On May 29, 2019, the Circuit Court sentenced Valoroso to four years of probation with conditions that included a one-year term of incarceration.

Following entry of the Judgment, Valoroso timely appealed.

## II. Discussion

Valoroso argues that "[i]f the [Circuit] Court had given the negligence instruction, the jury could have found that

10

the State had not proven [its] case beyond a reasonable doubt since the jury could have determined that [Valoroso's] state of mind in committing the act in question was simply negligent and not intentional or reckless."

We first note that Valoroso did not object to the omission of the negligent state-of-mind instruction until after the jury had reached a verdict. He must therefore demonstrate instructional error. See Hawaiʻi Rules of Penal Procedure Rule 30(f); State v. DeLeon, 131 Hawaiʻi 463, 479, 319 P.3d 382, 398 (2014); State v. Nichols, 111 Hawaiʻi 327, 141 P.3d 974 (2006). In the context of lesser-included-offense jury instructions, the supreme court has held that "when jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." State v. Malave, 146 Hawaiʻi 341, 349, 463 P.3d 998, 1006 (2020) (quoting State v. Flores, 131 Hawaiʻi 43, 57-58, 314 P.3d 120, 134-35 (2013)).

Here, Valoroso did not argue at trial that he acted negligently in committing the acts at issue. Indeed, Valoroso admitted below that negligence was not part of his defense theory; rather, he claimed not to have caused Taylor's injuries.

Furthermore, the Circuit Court instructed the jury that each of the material elements of Assault Two, in each alternative, and Assault Three must be proven by the prosecution beyond a reasonable doubt. In particular, Instruction Number 19 stated in relevant part: "In the first alternative, there are two material elements of the offense of assault in the second degree, each of which the prosecution must prove beyond a reasonable doubt[,]" including that Valoroso caused substantial bodily injury to Taylor, and that he did so "intentionally, knowingly, or recklessly." See supra note 6; HRS § 707-711(1)(a). The jury was also instructed on the statutory definitions of "intentionally," "knowingly," and "recklessly." See supra note 7; HRS § 702-206.

On this record, the "negligent" state of mind was not applicable to the elements of the charged offense (Assault One),

the included offenses (Assault Two and Assault Three), or Valoroso's defenses. See State v. Nakama, No. 28372, 2009 WL 953305, at *1 (Haw. App. Apr. 9, 2009) (SDO) (ruling that the negligent state of mind was not applicable to the elements of the defendant's charged offense of attempted murder in the second degree, or the lesser-included assault offenses). Valoroso's prospect for acquittal thus depended upon the jury finding an *absence* of the intentional, knowing, or reckless states of mind rather than a finding of negligence. Id. Morever, the State's evidentiary burden was adequately covered by the Circuit Court's jury instructions defining "intentionally," "knowingly," and "recklessly," and by informing the jury that the State must prove each statutory element of Assault Two and Assault Three beyond a reasonable doubt. See State v. Stuart, 51 Haw. 656, 660-61, 466 P.2d 444, 447 (1970) ("[W]here a given proposition of law is requested to be given in an instruction, the instruction may properly be refused where the same proposition is adequately covered in another instruction that is given. This is true even where the refused instruction is a correct statement of the law.").

Valoroso cites no authority indicating that the omission of a jury instruction defining an inapplicable state of mind — here, negligence — renders the instructions "prejudicially insufficient, erroneous, inconsistent, or misleading." Malave, 146 Hawaiʻi at 349, 463 P.3d at 1006. Indeed, this court has rejected similar arguments before. See, e.g., State v. Pattioay, No. CAAP-17-0000465, 2018 WL 2110089, at *1-2 (Haw. App. May 8, 2018) (SDO) (rejecting the defendant's argument that the trial court erred in "fail[ing] to instruct on the knowing and negligent states of mind," where the jury was properly instructed as to the applicable states of mind for terroristic threatening in the first degree — intentionally or recklessly); Nakama, 2009 WL 953305, at *1; see also State v. Tengbergen, No. 29302, 2009 WL 3478003, at *2 (Haw. App. Oct. 29, 2009) (SDO) (rejecting the defendant's argument that the trial court erred "in refusing to instruct the jury on the definition of a reckless state of mind," where the jury was properly instructed as to the applicable

12

states of mind for unlawful entry into a motor vehicle — intentionally or knowingly).  Other jurisdictions have reached comparable conclusions.  See, e.g., State v. Fuqua, 13 P.3d 34, 35 (Mont. 2000) ("If the prosecutor has charged a crime which requires proof of a knowing or purposeful mental state, the court is not required to instruct on an alternative mental state of negligence. . . . [T]he court need not instruct on a mental state which is not an element of the offense charged."); State v. Fetterly, 886 P.2d 780, 781-82 (Idaho Ct. App. 1994) (holding that in a prosecution for wilful concealment, the defendant was not entitled to a jury instruction on the statutory definition of "negligence" to aid her defense theory that she acted negligently but not wilfully).[9]

Accordingly, we conclude that the Circuit Court did not err in not instructing the jury regarding the negligent state of mind.

### III.  Conclusion

For these reasons, we affirm the "Judgment; Conviction and Probation Sentence; Terms and Conditions of Probation; Notice of Entry," entered on May 29, 2019, in the Circuit Court of the Second Circuit.


On the briefs:                         /s/ Lisa M. Ginoza

Steven Slavitt
for Defendant-Appellant                /s/ Keith K. Hiraoka

Richard B. Rost,
Deputy Prosecuting Attorney,           /s/ Clyde J. Wadsworth
County of Maui,
for Plaintiff-Appellee

---

[9]   In the present case, negligence was not part of Valoroso's defense theory.  We do not decide whether a negligent state-of-mind instruction is necessary or appropriate where the defendant is charged with assault and claims to have acted negligently in causing the complaining witness's injury.