No. 92-374

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

       Plaintiff and Respondent,

 -vs-

TIMOTHY SCOTT SNARIC,

       Defendant and Appellant.

**FILED**

NOV 17 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Edward McLean, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Larry D. Mansch, Public Defender's Office,
Missoula, Montana

       For Respondent:

           Hon. Joseph P. Mazurek, Attorney General, Micheal
Wellenstein, Assistant Attorney General, Helena,
Montana

           Robert L. Deschamps, III, Missoula County Attorney,
Karen Townsend, Deputy Missoula County Attorney,
Missoula, Montana

Submitted on Briefs: September 2, 1993

Decided: November 17, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a jury verdict from the Fourth Judicial District Court, the Honorable Ed McLean presiding. The jury found appellant Timothy Scott Snaric (Snaric) guilty of two of the four counts brought against him, tampering with or fabricating physical evidence and bail-jumping; and not guilty of two counts, theft and burglary. We affirm.

On April 18, 1991, Missoula resident Roger Lunschen returned home from work and found the front door to his home ajar. Initially, he thought he had merely failed to latch the door when he left earlier that day. However, he soon discovered that his emergency channel scanner was missing and, after further investigation of his home, determined that two pistols with holsters, and car keys belonging to his 1976 Datsun station wagon and the station wagon itself were missing. Mr. Lunschen immediately called the Missoula Police Department to report the burglary of his home and the theft of his 1976 Datsun. The 1976 Datsun was listed with the Missoula Police as a stolen vehicle.

On July 13, 1991, at 1:30 a.m., while on night patrol for the Missoula City Police Department, Officer Mike Brady (Brady) observed a "grayish Datsun" driving very close to the right-hand side of the roadway without its lights on. Brady turned on his overhead lights and began following the car, eventually turning on his siren because the car would not stop. As he continued to pursue the vehicle, it pulled into an athletic club parking lot and

then drove toward a park. Brady testified the car made a left circle and then "turned around and came in head-on at me." The two cars narrowly avoided collision and, after the car had travelled another 100 feet past Brady, it stopped. The driver of the vehicle jumped out of the car and Brady yelled at him to put his hands up and stop. The driver went around to the passenger side of the car and attempted to get in the door. By that time Officer Brady was up to the man and grabbed him. A passenger in the car was removed from the car by another officer who arrived at the scene. Brady later identified the driver as Snaric and the passenger as Ray Bailey.

A registration check was made on the Datsun station wagon's license plates and it was discovered that the plates actually belonged to a 1964 Buick. The Datsun's vehicle identification number was then checked which led to the information that the vehicle had been reported stolen. Brady arrested Snaric for the theft of the Datsun station wagon. It was later determined that the Datsun was Mr. Lunschen's stolen car.

On July 26, 1991, the State filed an information charging Snaric with the theft of Lunschen's Datsun; Snaric posted a $500 bond and was released. On July 31, 1991, he appeared in court and pled not guilty to the theft charges. On October 15, 1991, the deputy county attorney filed a notice for Snaric to appear at the District Court on October 30, 1991 for a change of plea hearing. At that October 30, 1991, hearing, the deputy county attorney and Snaric's counsel appeared, however, Snaric did not. The court

3

granted defense counsel's continuance and the change of plea hearing was reset for November 13, 1991.

On November 13, 1991, the deputy county attorney and Snaric's counsel appeared; Snaric again failed to appear. The deputy county attorney moved for, and was granted, a bench warrant as well as a petition to forfeit Snaric's bond. While the court granted the bond forfeiture, it allowed Snaric thirty days to appear in court to provide a satisfactory excuse as to why he had not complied with the conditions of bail. During the period between his failure to appear and the bond forfeiture, the deputy county attorney moved to amend the information to include a burglary charge of Lunschen's home and a tampering with or fabricating physical evidence charge. The District Court granted the motion to amend the information.

Pursuant to the bench warrant and petition for bond forfeiture, Snaric appeared in court without counsel on December 30, 1991, where he was advised of the petition filed against him and his right to counsel. Counsel was appointed and the proceedings were reset for January 8, 1992.

On January 8, 1992, with Snaric and his counsel present in court, the deputy county attorney filed a second amended information in which she added the charge of bail-jumping to the three previous counts. Snaric pled not guilty to each of the four counts contained in the second amended information, bail was set at $15,000, and Snaric was remanded to the custody of the sheriff.

On March 5, 1992, the jury found Snaric guilty of bail-jumping, as a result of his failure to appear at the November 13,

4

1991 hearing; and guilty of tampering with or fabricating physical evidence.

The facts surrounding the tampering with evidence charge involve a fraudulent letter and bill of sale. After the State charged Snaric with the theft of Lunschen's Datsun, Snaric asked his friend, Mike Mace (Mace), to write a letter confirming the fact that Snaric had bought the Datsun at a Missoula bar. The letter stated:

> Around the first part of May, [Snaric] and I stopped at the Trail's End Bar. While playing a game of pool, a guy named Joe introduced himself to [Snaric] and I. He asked if I was interested in buying a car. I said no because I'm legally blind and could not drive anymore. [Snaric] said he would take a look at it. We all went out the back door to look at it. [Snaric] asked Joe to start the car, to see what it sounds like. [Snaric] asked if the car had a clear title. Joe then replied that [Snaric] would have to apply for a lost title because he didn't have any of the paperwork on the car. I then suggested that [Snaric] get a bill of sale for the car. A price of $200 was agreed upon and, the bill of sale given.
>
> /s/ Michael P. Mace

At trial Mace admitted that Snaric knew the information in the letter was not true; that Snaric was with him, at his kitchen table when they fabricated the letter; and that Mace wrote the letter because Snaric had "asked me to help and I decided that I would . . . ."

In addition to fabricating a fraudulent letter to support his contention that he bought the Datsun, Snaric also had a fraudulent bill of sale created. Mace further testified that he suggested that Snaric get a bill of sale for the car since he did not have its title. Mace explained that the bill of sale, entered as

5

defendant's exhibit A, was written about the same time as the letter. It stated:

> I John Woodcock do sell one 1976 Datsun station wagon blue in color to [Snaric] for $200.00 dollars on May 3, 1991.

Mace identified defendant's exhibit A as the bill of sale that Snaric read to him. Prior to trial, Mace told the police he did not know who wrote the bill of sale. During cross-examination, however, Mace revealed that his friend, Ron Daniels, wrote the bill of sale at his kitchen table. Mace explained that he had not told the police about Daniels' involvement for fear of getting Daniels in trouble.

Because of this new evidence, the court allowed the State to reopen its case-in-chief in order to question Daniels. Daniels testified he had written the bill of sale at Mace's house in the presence of Snaric and Mace. Daniels explained that Snaric gave him the information contained in the bill of sale and that he was present in Mace's house when Mace wrote the letter about Snaric purchasing a car at the Trail's End Bar.

Appellant presents two issues on appeal:

1. Did the District Court err when it denied Snaric's motion for judgment notwithstanding the verdict under Count IV, bail-jumping?

2. Did the District Court err when it allowed the State to reopen its case and present cumulative testimony following cross-examination of the State's last witness?

6

I

It is Snaric's opinion that the State failed to prove the elements of the crime of bail-jumping, Count IV. Count IV of the second amended information stated:

On or about November 13, 1991, . . . [Snaric], having been set at liberty by the order of District Court Judge Ed McLean upon condition that he would subsequently appear at the Missoula County District Court on November 13, 1991, purposely failed without lawful excuse to appear at that time and place by failing to keep his counsel informed as to his address and failing to respond to a Notice to Appear for change of plea. The defendant was, at the time, charged with a Felony.

Snaric argues the court's failure to order him to appear occurred for two reasons. First the initial notice to appear on October 30, 1991, was given by the county attorney and not the judge. Second, deputy county attorney Karen Townsend and public defender Diana Leibinger appeared in the District Court on October 20, 1991, at the time and place mentioned in the county attorney's notice to appear. Snaric's motion for a continuance was heard, not opposed, and granted. Snaric argues that contrary to the State's contention in its memorandum in opposition to defendant's motion to set aside the guilty verdict, dated April 27, 1992, no evidence that the District Court had ordered Snaric to appear on November 13, 1991, was presented at trial. Judge McLean's granting of a continuance merely set November 13, 1991, as the new date for his change of plea. No new notice to appear was issued by the court; therefore, when Snaric did not appear on November 13, 1991, he failed to appear under an oral amendment to the only notice to appear that existed--the notice issued by the county attorney.

7

Snaric argues that the State failed to prove the elements of the offense of bail-jumping. Section 45-7-308, MCA, defines the offense of bail-jumping and provides in pertinent part:

> A person commits the offense of bail-jumping if, having been set at liberty by court order, with or without security, upon condition that he will subsequently appear at a specified time and place, he purposely fails without lawful excuse to appear at that time and place.

Snaric contends that he was not ordered by the District Court to appear in court at the November 13, 1991, change of plea hearing, and, therefore, he could not have been convicted of bail-jumping under § 45-7-308, MCA.

Regardless of Snaric's contentions, the record shows that the District Court ordered him to appear at the November 13, 1991 hearing. The original notice to appear for the change of plea hearing was signed by the county attorney. That notice directed him to appear in District Court on October 30, 1991. He did not appear on October 30, 1991, but his counsel did appear. His counsel at that time requested a continuance of the hearing, which was not opposed by the county attorney. The District Court granted the continuance and reset the hearing for November 13, 1991. It was the District Court, not the county attorney that set the November 13, 1991, date for Snaric to appear in court. When he did not appear, he defied the District Court's order. His argument that the county attorney had previously ordered him to appear has no merit.

In denying the appellant's motion to set aside the jury's guilty verdict on the charge of bail-jumping, the court noted that

8

Snaric had failed to appear after being ordered by the court to do so. The court stated:

> The Defendant's Motion to Set Aside the verdict is denied based on the fact that the Defendant was ordered to appear <u>by the Court</u> after he failed to appear pursuant to a notice that was issued by the county attorney's office.
>
> Specifically, the Court ordered him to appear on November 13th, and that was after the Defendant had failed to appear on the 30th of October and the Defendant's attorney requested a continuance. At that time I set further appearance for November 13th. The Defendant failed to appear. [Emphasis added.]

Under these facts, the record demonstrates that the State proved every element of the charge of bail-jumping, including the fact that the District Court ordered Snaric to appear at the November 13, 1991 hearing. There was no abuse of discretion in denying Snaric's motion to set aside the jury's guilty verdict for the offense of bail-jumping.

II

The next issue we address is whether the court abused its discretion in permitting the State to introduce the testimony of Ron Daniels.

Under the facts previously set forth, Ron Daniels' name did not come up until a defense witness mentioned his name at trial. At that time the court took a recess and allowed defense counsel to examine Ron Daniels after Mace testified on cross-examination that Daniels was the one who, on Snaric's behalf, had written the fraudulent bill of sale. Prior to that cross-examination, Mace had maintained that he had no knowledge of who wrote the bill of sale.

9

The order of trial is controlled by § 46-16-401, MCA, which "provides that the State should offer its case-in-chief prior to that of the [defendant]." State v. White (1980), 185 Mont. 213, 216, 605 P.2d 191, 193. Section 46-16-402, MCA, allows the district court to exercise its discretion to depart from the usual order of trial for good cause. White, 605 P.2d at 193.

Here, the District Court had good cause to permit the State to reopen its case-in-chief and present the testimony of Daniels. First, as the District Court noted, Mace's testimony that Daniels created the bill of sale came as a complete surprise to the State. The State was unaware of Daniels' involvement and, logically, did not have the opportunity to call Daniels at its case-in-chief. Second, Daniels' testimony that he had prepared the fraudulent bill of sale at Snaric's request was relevant to the issue of whether Snaric fabricated physical evidence. See Rule 401, M.R.Evid.; State v. Hall (1990), 244 Mont. 161, 169, 797 P.2d 183, 188.

In White, 605 P.2d at 194 (citations omitted), this Court held:

> It has long been the rule in Montana that the order in which proof is admitted at the trial is within the sound discretion of the trial court . . . and that the usual order of trial may be departed from in the proper case.

Here, we conclude that the court had "good cause" to depart from the usual order of the trial, namely the surprise of Mace's testimony and the relevance of Daniels' testimony to the fabricating physical evidence charge. We hold the court did not abuse its discretion in permitting the State to reopen its case-in-chief to introduce Daniels' testimony.

10

While Snaric argues that Daniels' testimony prejudiced him, under Rule 403, M.R.Evid., "the determination of admissibility is within the discretion of the trial judge and will not be disturbed unless there is manifest abuse of discretion." Hall, 797 P.2d at 189. The probative value of Daniels' testimony far outweighs any danger of unfair prejudice to Snaric. Daniels' testimony was relevant and probative of the issue of whether Snaric had fabricated the fraudulent bill of sale. Daniels testified that he fabricated the bill of sale in Mace's kitchen at Snaric's request and that Snaric gave him the information to include on the bill of sale, specifically, the date of the transaction and the price of the Datsun.

We note that Daniels' testimony, although new evidence concerning the bill of sale, was introduced during the State's rebuttal along with the State's other rebuttal witnesses. Daniels' testimony was not given any specific significance by the court and it did not have an inordinate impact on the jury because it was reviewed with the other rebuttal witnesses. Any prejudice caused by Daniels' testimony was tempered by the District Court's allowing Snaric to interview Daniels prior to his testimony and the court's granting Snaric the opportunity to rebut Daniels' testimony by reopening his case-in-chief and calling additional witnesses on his own.

In addition, we note that contrary to Snaric's assertions, Daniels' testimony was not cumulative. Regardless of how Snaric's argument, Daniels' testimony was not introduced to rehabilitate

11

Mace's character for truthfulness; rather Daniels' testimony went to the central issue of whether the bill of sale was fraudulent and, therefore, was properly admitted by the District Court.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12