JUSTICE HUNT
delivered the Opinion of the Court.
¶1 Defendant, Richard Lance Gowan (Gowan), appeals from a jury verdict in the Eleventh Judicial District Court, Flathead County, finding him guilty of two counts of criminal sale of dangerous drugs. We reverse and remand for a new trial.
¶2 The dispositive issue on appeal can be restated as follows:
Did the District Court err in holding that a defense witness’ gratuitous statement, offered in response to the State’s *129 cross-examination, opened the door for rebuttal character evidence?
FACTUAL BACKGROUND
¶3 On October 21,1997, Gowan was charged by information with two counts of criminal sale of dangerous drugs, both felonies. At his arraignment, Gowan pled not guilty to both counts. On November 17, 1997, the District Court executed a preprinted form entitled Action Taken at Omnibus Hearing. In that form the State indicated that it would not rely upon Gowan’s prior acts or convictions. Gowan indicated his intent to rely upon the defense of entrapment.
¶4 A jury trial was held on March 2-3,1998. After opening statements, the parties again met with the District Court to discuss the admissibility of Gowan’s prior peijury conviction and what evidence, if any, would be admissible should Gowan choose to testify. The District Court ruled that while direct evidence of a prior conviction was not admissible, the State would be permitted to ask Gowan, in the event he testified, only if he had lied under oath in the past. Once again, the District Court clarified that the State was not to make references to Gowan’s prior convictions.
¶5 At trial, Gowan called his girl friend, Kris McPherson (McPherson), as a witness. She was not designated as a character witness and on direct-examination McPherson offered no character testimony. On cross-examination, however, the following transpired:
[Prosecutor]
Q. Why didn’t you tell him to go to the police, instead of selling drugs, to get the title to your car?
[McPherson]
A. Because I didn’t tell him to sell drugs to get the title to the car. I actually told him the guy’s melon -
(court reporter stops proceedings)
A. Sorry. And then it wasn’t until after everything had went down that I found out -1 never knew Paul’s last name. I’m in the car business, so I deal with all the car dealers in town. He had just told me about some car from Paul, paid him in full, and he hadn’t got a title yet. And I couldn’t believe he’d do that, but he’s a very honest and trusting person.
Q. Who’s honest and trusting?
A. Lance.
Q. Lance is honest?
*130 A. Yes. He trusted Mr. Southwick with the title.
Q. What do you base that comment on, him being honest? Come on, Ms. McPherson.
A. I don’t know what you’re getting at, Mr. Corrigan.
Q. Lance isn’t honest.
[Defense Counsel]
Mr. Musick: Objection, your honor.
¶6 After argument of counsels, the District Court ruled that in light of our decision in State v. Austad (1982), 197 Mont. 70, 641 P.2d 1373, and under Rules 404(a)(1) and 405(a), M.R.Evid., that McPherson had offered character evidence. Therefore, the District Court concluded that McPherson had opened the door to character evidence, even though her testimony was in response to cross-examination. The State was allowed to inquire if McPherson was aware that Gowan had been convicted of perjury. The State also made references to Gowan being on probation and being sued for failure to deliver a title.
¶7 The jury found Gowan guilty of both counts of criminal sale of dangerous drugs. Gowan filed an application for review of his sentence with the Sentence Review Division of the Montana Supreme Court. After they carefully considered Gowan’s application, the board affirmed his sentence with the modification that one year be suspended on count I.
¶8 On May 19, 1998, Gowan, acting pro se, filed a notice of appeal with the Clerk of the Montana Supreme Court, which was subsequently filed with the Clerk of the District Court, Flathead County, on May 28, 1998. The District Court also granted Gowan’s request for the appointment of counsel and his request to proceed in forma pauperis. Gowan now appeals his conviction to this Court.
STANDARD OF REVIEW
¶9 We review a district court’s evidentiary rulings for an abuse of discretion. State v. MacKinnon, 1998 MT 78, ¶ 12, 288 Mont. 329, ¶ 12, 957 P.2d 23, ¶ 12 (not an abuse of discretion to prohibit cross-examination of the victim’s mother about prior unrelated incidents of sexual assault). A district court is granted broad discretion to determine whether evidence is relevant and admissible. MacKinnon, ¶ 12. If evidence has been improperly admitted, however, we will find reversible error based on prejudice to the defendant where there is a reasonable probability that the inadmissible evidence might have contributed to the conviction. State v. Berger, 1998 MT 170, ¶ 39, 290 *131 Mont. 78, ¶ 39, 964 P.2d 725, ¶ 39 (not an abuse of discretion to allow questions during redirect-examination about why the witness moved from town in order to give a complete impression. The jury is entitled to a complete explanation, even if that explanation reflects poorly upon the defendant.).
DISCUSSION
¶10 Did the District Court err in holding that a defense witness’ gratuitous statement, offered in response to the State’s cross-examination opened the door for rebuttal character evidence?
¶11 This issue requires us to address, for the first time, whether a gratuitous character statement made by a defense witness while being cross-examined by the State “opens the door” to rebuttal character evidence. We conclude that although a defendant can open the door with statements made during either direct or cross-examination, and a defense witness can open the door on direct-examination, a defense witness cannot inadvertently open the door on cross-examination. Under Rule 404(a)(1), M.R.Evid.,only the accused can “open the door” for the prosecution to introduce rebuttal character evidence.
¶12 Gowan argues that the District Court abused its discretion by allowing evidence of his perjury conviction in violation of its own pretrial order. He claims that this was inherently prejudicial, because he did not have the opportunity to adequately prepare for admission of this evidence. He alleges that he made critical decisions regarding both voir dire and trial strategy in reliance upon the District Court’s pretrial order. Gowan cites State v. Doll (1985), 214 Mont. 390, 396-97, 692 P.2d 473, 476; and State v. Howell (1987), 226 Mont. 148, 152, 734 P.2d 214, 217, in support of this argument.
¶13 Gowan concedes that the State can enter rebuttal evidence of bad character if a defendant opens the door by first entering evidence of good character. He, however, argues that a non-character defense witness cannot place a defendant’s character at issue with statements made in response to the State’s cross-examination, because only the defendant can place his character at issue and thus open the door for the State’s rebuttal. Gowan argues that his situation is distinguishable from Austad. He points out that in Austad, the accused himself made unnecessary, self-serving statements which he knew to be untrue. While in his case his witness inadvertently commented *132 that he was honest and trusting in explaining how he could have been duped by the State’s informant.
¶14 Gowan argues that his case is closer to State v. Webb (1992), 252 Mont. 248, 255, 828 P.2d 1351, 1356; and State v. Harris (1991), 247 Mont. 405, 410, 808 P.2d 453, 456. In those cases we held that it was improper for the State to open its own door so it could then enter evidence of good character to rehabilitate its own witness. Gowan claims that allowing a witness to open the door on cross-examination would discourage defendants, with a criminal history, from calling witnesses who could provide crucial testimony about a limited aspect or element of the alleged crime. He further asserts that in virtually every case, the State could devise some strategy to elicit character testimony from a witness and open the door to present impeachment evidence or rebuttal testimony of bad character. On cross-examination, the State is in control of the witness and able to substantially prejudice the defendant with one question.
¶15 The State counters that the District Court did not abuse its discretion when it allowed the State to cross-examine a defense witness regarding Gowan’s prior pexjury conviction after the witness testified that Gowan was honest. The State claims that Rules 404(a) and 405(a), M.R.Evid., allow the State to inquire into relevant specific instances of conduct once the defense offers a pertinent trait of the defendant’s character. The State argues that this also applies to statements made by defense witnesses on cross-examination.
¶16 The State argues that this case is similar to Austad. In that case the defendant answered a cross-examination question with an unnecessary, self-serving statement. Here, the witness testified that Gowan was honest when the State cross-examined her. The State asserts that her answer was an unnecessary, self-serving statement which, as further questioning revealed, she knew to be untrue, but which obviously placed Gowan in a better light with the jury. Therefore, she opened the door to Gowan’s character by testifying that he was honest.
¶17 The State attempts to lend credence to this argument by saying that once the statement was made it was necessary to counter it’s effect on the jury. In support, the State cites ££[t]he right of cross-examination extends not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy.... As a general rule, in the interests *133 of truth and justice, a wide latitude should be permitted, in the cross-examination of an adverse witness; or as otherwise stated, a full cross-examination should be permitted.” State v. McKnight (1955), 129 Mont. 8, 20, 281 P.2d 816, 822 (citing State v. Howard (1904), 30 Mont. 518, 527, 77 P. 50, 54 and 70 C. J., Witnesses, § 792 at 619) overruled on other grounds by State v. Wirtanen (1965), 146 Mont. 268, 406 P.2d 376.
¶ 18 The right to a full cross-examination of a defendant’s character traits, once placed at issue, is not limitless. State v. Eklund (1994), 264 Mont. 420, 430, 872 P.2d 323, 329 (it was reversible error for the State to cross-examine defendant’s character witness about the defendant’s prior murder charges to rebut his nonviolent character evidence); State v. Heine (1976), 169 Mont. 25, 29, 544 P.2d 1212, 1214 (“the accused’s entire life should not be searched in an effort to convict him.”). Further, where the defendant has not opened the door regarding a pertinent character trait, the State is not allowed to inquire on cross-examination into relevant, specific instances of conduct. Rule 404(a), M.R.Evid.; United States v. Park (5th Cir. 1976), 525 F.2d 1279, 1283 (where the prosecution elicited testimony from two witnesses that was beyond the scope of direct-examination). Unless and until the accused places his character at issue, the door is closed for the State to enter evidence of a defendant’s character because the dangers of prejudice, confusion, and time-consumption outweigh the probative value, see, 1 John W. Strong et al., McCormick on Evidence § 190, at 658-59 (5th ed. 1999).
¶19 Generally, a defendant’s character or character trait is not admissible in criminal cases to prove that the defendant acted in conformity with that trait. Rule 404(a), M.R.Evid. “The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade [sic] them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.” Michelson v. United States (1948), 335 U.S. 469, 475-76, 69 S.Ct. 213, 93 L.Ed. 168. In other words, persons of bad character are more likely to commit crimes than are persons of good character, but the law fears that a defendant will be convicted merely because he is an unsavory person.
¶20 The various justifications for this general rule are reducible to three: (1) the strong tendency to believe a defendant is guilty of the offense charged merely because he is a likely person to do such acts because of his distasteful propensities; (2) the deep tendency of human *134 nature to condemn, not because a defendant is guilty of the offense charged, but because he is a bad person who has escaped punishment from past transgressions and may as well be punished now that he is caught; and (3) the overwhelming burden of requiring a defendant to not only defend against the offense charged but also allegations of bad conduct from his whole past. 1A Wigmore, Evidence § 58.2, at 1215 (Tiller rev. 1983). Or put simply, character evidence is excluded to prevent undue prejudice, confusion of issues, and unfair surprise.
¶21 Justice Jackson rightfully described the law regarding proof of a criminal defendant’s character as “archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege to the other.” Michelson, 335 U.S. at 486, 69 S.Ct. 213. It extends “helpful but illogical options to a defendant” but then balances these with “equally illogical conditions to keep the advantage from becoming an unfair and unreasonable one”Michelson, 335 U.S. at 478-79, 69 S.Ct. 213. Even saying that the defendant placed his character at issue is misleading. The defendant’s character does not become an element of the offense. Rather, the defendant is attempting to prove his innocence through circumstantial evidence. Likewise, the State attempts to establish that the defendant’s bad propensities make his guilt of the charged crime more probable.
¶22 Because character evidence is relevant in resolving probabilities of guilt, however, the law allows a defendant to introduce evidence of his good character. Rule 404(a)(1), M.R.Evid.; see, 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 101, at 544 (2nd ed. 1994). “He may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged.” Michelson, 335 U.S. at 476, 69 S.Ct. 213. But in doing so, he may be opening the door to irresponsible gossip, innuendo and smear.
¶23 Once the door is opened, the State may introduce rebuttal evidence of its version of the defendant’s true character. Rule 404(a)(1), M.R.Evid; State v. Baker (1991), 249 Mont. 156, 159, 815 P.2d 587, 589. The State may accomplish this by either cross-examining the defendant’s character witness or by calling rebuttal witnesses of its own. Rule 405(a), M.R.Evid; State v. D.B.S. (1985), 216 Mont. 234, 245-46, 700 P.2d 630, 637-38 (cross-examining a character witness) overruled on other grounds by State v. Olson (1997), 286 Mont. 364, 951 P.2d 571; State v. Anderson (1984), 211 *135 Mont. 272, 292, 686 P.2d 193, 204 (use of a rebuttal witness). In establishing bad character, the State may enter evidence of both reputation and opinion. State v. Clark (1984), 209 Mont. 473, 489, 682 P.2d 1339, 1348. “[I]t is not the man that he is, but the name that he has which is put in issue.” Michelson, 335 U.S. at 479. For these reasons, only the defendant is allowed to make the precarious decision to put character at issue.
¶24 We have held that a defendant put his character at issue by answering a question on cross-examination with an unnecessary, self-serving statement which he knew to be untrue, intended to place him in a better light with the jury. In that situation, the door is open for the prosecution to rebut this gratuitous character testimony by the defendant. Austad, 197 Mont. at 90, 641 P.2d at 1384. We concluded that “[t]he Rules of Evidence were not intended to muzzle the State against [a] defendant’s deliberate attempts to mislead jury members by lying to them in answering specific question.” Austad, 197 Mont. at 90, 641 P.2d at 1384. The case at bar, however, involves statements that the defendant had no control over.
¶25 Here, Gowan’s witness offered no character testimony on direct-examination. On cross-examination, however, this defense witness gave a non-responsive answer which contained a gratuitous good character statement about Gowan. She said “but he’s a very honest and trusting person.” The State should have requested that the witness confine her answers to the questions asked, and requested that her statement be stricken from the record. Instead the State pounced on this opportunity to introduce evidence of bad character. The District Court, relying on our decision in Austad, concluded that this opened the door for the State to pursue rebuttal character evidence. We disagree.
¶26 The facts here are distinguishable from those of Austad. In Austad, the defendant opened the door with his own statements. Something he had total control over. He attempted to enter testimony of his good character and he paid the price. Gowan, conversely, had no control over what his witness said while being cross-examined by the State. The State cannot elect to convert a defense witness, who has neither been called as a character witness nor testified of good character on direct-examination, into a character witness. 2 Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence § 404.11[2][b], at 404-25 (Joseph M. McLaughlin ed., 2nd ed. 2000). Because of the deep tendency of human nature to give evidence of bad *136 character much weight in assigning guilt, only the accused are allowed to open that door.
¶27 Since only a defendant can open the door to rebuttal character evidence, the District Court erred in holding that a defense witness could in a statement made during cross- examination. Something Gowan had no control over. Because this issue is dispositive, we need not address the other issues Gowan raises.
¶28 Gowan’s conviction is reversed and his case is remanded for a new trial.
JUSTICES REGNIER, LEAPHART and TRIEWEILER concur.