No. 01-069

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 55

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

DONNIE NOLAN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                     In and for the County of Yellowstone, Cause No. DC-99-330
                     Honorable G. Todd Baugh, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

            Kristina Guest, Assistant Appellate Defender, Helena, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
            Attorney General, Helena, Montana

            Dennis Paxinos, County Attorney; Melodee Hanes, Deputy County
            Attorney, Billings, Montana

                           Submitted on Briefs:   January 31, 2002

                                    Decided:   March 25, 2003

Filed:

                  _____
                               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Donnie Nolan appeals from a judgment entered by the Thirteenth Judicial District Court, Yellowstone County, after a jury found him guilty of two counts of bail-jumping. We reverse the judgment and remand for proceedings consistent with this Opinion.

¶2 We address the following issues:

¶3 1. Did the State of Montana establish the element "set at liberty by court order" of the Count II bail-jumping charge?

¶4 2. Did the prosecutor engage in impermissible cross-examination and submit inadmissible rebuttal evidence?

¶5 Nolan failed to appear for a criminal trial against him set for May 4, 1999. He was arrested on a bench warrant later that day, and trial–at which he was convicted of resisting arrest and criminal endangerment–was held two days later. Nolan's failure to appear for trial on May 4, 1999, is the basis for the Count I bail-jumping charge in this action.

¶6 Nolan then failed to appear for his July 12, 1999, sentencing following his conviction at his May 1999 trial. He was arrested in California five months later on a bench warrant, returned to Montana, and sentenced. (We affirmed his conviction in *State v. Nolan*, 2003 MT 13, 314 Mont. 47, 62 P.3d 1118.) In June of 2000, the District Court granted the State leave to amend the Information in this action by adding a second count of bail-jumping, for Nolan's failure to appear for his July 12, 1999, sentencing (Count II).

¶7     The District Court denied Nolan's motion to sever trial of Counts I and II. Nolan represented himself at his three-day jury trial, at the end of which the jury found him guilty on both counts of bail-jumping.

Issue 1

¶8     Did the State of Montana establish the element "set at liberty by court order" of the Count II bail-jumping charge?

¶9     Due process requires the State to prove all elements of a charged criminal offense. *Sullivan v. Louisiana* (1993), 508 U.S. 275, 277-78, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182, 188. We review the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Granby* (1997), 283 Mont. 193, 199, 939 P.2d 1006, 1009.

¶10    Bail-jumping is defined at § 45-7-308, MCA:

> A person commits the offense of bail-jumping if, having been set at liberty by court order, with or without security, upon condition that he will subsequently appear at a specified time and place, he purposely fails without lawful excuse to appear at that time and place.

Nolan argues that the State did not establish that he was "set at liberty by court order" when he failed to appear for sentencing in July of 1999.

¶11    The State contends that *State v. Snaric* (1993), 262 Mont. 62, 862 P.2d 1175, applies. In *Snaric*, this Court held that the State had proven the elements of bail-jumping in the face of Snaric's claim that he had not been ordered to appear for a change of plea hearing. The

3

State says that, in the present case, the court's setting of a sentencing date was a court order to appear.

¶12 The State's assertion does not address, however, whether Nolan was set at liberty by a court order. The element of "set at liberty by court order" was not at issue in *Snaric*. In fact, the Information against Snaric stated, in relevant part, that Snaric had "been set at liberty by the order of District Court Judge Ed McLean upon condition that he would subsequently appear . . . ." *Snaric*, 262 Mont. at 66, 862 P.2d at 1178. We conclude that *Snaric* does not control.

¶13 At the trial in this matter, the Yellowstone County Clerk of District Court testified that, at the conclusion of the verdict in Nolan's May 1999 trial, the District Court specifically commanded, "The defendant is remanded to the custody of the Sheriff." A legal assistant to the Yellowstone County Attorney testified Nolan was mistakenly released from the jail prior to his sentencing, apparently because jail personnel saw that he had earlier posted bond and did not see that a second bond had been imposed on the bench warrant issued when he failed to appear for trial. The District Court did not sign an order setting Nolan at liberty, and Nolan did not post bond.

¶14 We conclude that as to Count II, the State did not establish that Nolan was "set at liberty by court order," the first element of the offense of bail-jumping, as a matter of law. We conclude, therefore, as a matter of law, that no rational jury could have found the elements of the offense beyond a reasonable doubt. We reverse Nolan's conviction on Count II and direct the District Court to dismiss that charge.

Issue 2

¶15    Did the prosecutor engage in impermissible cross-examination and submit inadmissible rebuttal evidence?

¶16    Evidence of a defendant's character or character trait generally is not admissible in a criminal case to prove that the defendant acted in conformity with that trait. Rule 404(a), M.R.Evid. If a defendant first opens the door by entering evidence of good character, though, the State may present rebuttal evidence of bad character. *See State v. Gowan*, 2000 MT 277, ¶ 11, 302 Mont. 127, ¶ 11, 13 P.3d 376, ¶ 11. The rebuttal evidence must be legitimate and relevant. *State v. Eklund* (1994), 264 Mont. 420, 429, 872 P.2d 323, 329. We review a district court's evidentiary rulings for abuse of discretion. *Gowan*, ¶ 9.

¶17    In presenting his defense at trial, Nolan testified that the reason he did not appear for his May 4, 1999, trial (Count I) was that he was taking prescription medication for pain from a rotten tooth and slept through the time he was to be in court. He testified that he did not appear for sentencing (Count II) because he feared he was facing 120 years in prison, he loved his children and did not want to leave them and he did not want to leave a job he had just accepted as a used car salesman.

¶18    On cross-examination, and over Nolan's objection, the prosecutor asked Nolan to "[t]ell me every one of your odd jobs," and pursued an extended series of questions attempting to elicit from Nolan every job he had had in addition to car salesman. Nolan answered that he had also had odd jobs including lawn mowing, detailer, drywaller and painter, and did "[j]ust about whatever I could just about get my hands into" because he had

"little mouths to feed and bills to do." The prosecutor inquired as to whether Nolan had done anything illegal to make money, and Nolan testified that he had not.

¶19 The prosecutor also cross-examined Nolan extensively–again, over Nolan's objection– about his personal relationships. She began by questioning him about his children. In response to a series of questions, Nolan admitted he has five children under the age of 12 with four different women, none of whom he had married. The prosecutor questioned Nolan about having relationships with several women at one time and that two of the women were pregnant at the same time. Nolan also admitted that he had not paid any child support through the courts, but stated he had not been ordered to pay any and that he had supported his children directly through their mothers. At one point, Nolan objected to questioning about his relationship with a certain woman on grounds that he had no children with her. The prosecutor replied, "Well, she would be one of the few that hasn't had one of your kids."

¶20 On rebuttal, over Nolan's objection, the prosecution presented the testimony of a woman who stated she had worked as a prostitute in 1999 and that Nolan was her pimp. The woman testified that her income while working as a prostitute had been about $500 per night, all of which she turned over to Nolan in exchange for "[p]retty much whatever I wanted." She had since "cleaned up" and obtained employment in a meat packing plant.

¶21 The State contends Nolan opened the door to the prosecution's cross-examination and rebuttal by his assertions that he was a decent man and member of the community who cared about his family. It points out that Nolan offered evidence on his character that was broader

6

than the crime charged, citing *Michelson v. United States* (1948), 335 U.S. 469, 484, 69 S.Ct. 213, 222, 93 L.Ed. 168, 178.

¶22 Nolan contends the prosecutor's cross-examination and rebuttal evidence forced him to defend his lifestyle choices about the number of women he slept with, the number of children he had, his financial care of his children and the allegation that he worked as a pimp. Nolan states the prosecutor thus impermissibly turned a bail-jumping trial into a trial of his morals.

¶23 On this record, we agree with Nolan. The State's right to a full cross-examination of a defendant's character traits, once placed at issue, is not limitless. *Gowan*, ¶ 18. "[T]he accused's entire life should not be searched in an effort to convict him." *Gowan*, ¶ 18 (quoting *State v. Heine* (1976), 169 Mont. 25, 29, 544 P.2d 1212, 1214). In this case, the prosecutor went beyond permissible cross-examination and rebuttal and ended up trying Nolan's character. We conclude the District Court abused its discretion in failing to sustain Nolan's objections to these lines of questioning.

¶24 Once error has been established, we conduct a two-step analysis to determine whether the error prejudiced the criminal defendant's right to a fair trial and is therefore reversible. The first step in the analysis is an inquiry as to whether the error is categorized as structural error or trial error. *State v. Van Kirk*, 2001 MT 184, ¶ 37, 306 Mont. 215, ¶ 37, 32 P.3d 735, ¶ 37. Erroneous admission of evidence, such as in this case, is a classic example of trial error. *See Van Kirk*, ¶ 48. Trial error is not presumptively prejudicial and therefore not automatically reversible. It is subject to review under our harmless error statute, § 46-20-

7

701(1), MCA, which provides that "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial." *See Van Kirk*, ¶ 40.

¶25 The State contends the evidence of both Nolan's guilt and his lack of credibility was so overwhelming that any error was harmless. However, in *Van Kirk*, we rejected the "overwhelming evidence" test, noting that this test had "eclipsed the more substantive inquiry of whether the erroneously admitted evidence might have contributed to the conviction," in favor of a "cumulative evidence" test. *Van Kirk*, ¶¶ 34, 43. We further explained that in cases where tainted evidence was not introduced as proof of an element of the crime charged, the State must nonetheless demonstrate that, qualitatively, there was no reasonable possibility that the tainted evidence might have contributed to the defendant's conviction. *Van Kirk*, ¶ 46. Here, the tainted evidence was not introduced in the State's case-in-chief, but in the cross-examination of Nolan and in rebuttal, ostensibly to refute his character evidence and impeach his credibility. Accordingly, the State's burden is to demonstrate that the evidence did not reasonably contribute to Nolan's conviction.

¶26 The evidence adduced by the prosecution, over Nolan's objection, concerning his personal relationships and employment was highly inflammatory and prejudicial. In a trial that hinged on Nolan's credibility, we are persuaded that a significant possibility exists that the qualitative effect of the prosecutor's improper cross-examination and rebuttal testimony contributed to his conviction. We therefore reverse Nolan's conviction on Count I and remand for further proceedings relating to that charge.

8

¶27    Because we have reversed Nolan's conviction on Count II and directed the District Court to dismiss that charge, and also have reversed and remanded Count I for retrial, we need not address the third issue raised by Nolan, concerning whether he was prejudiced by joinder of the two counts.

¶28    Reversed and remanded.


                                                    /S/ JIM RICE


We concur:


/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART