No. 03-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 32

STATE OF MONTANA,

>Plaintiff and Respondent,

v.

WILLIAM W. CAMERON, SR.,

>Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 2002-093(C),
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Daniel Donovan, Thompson, Potts & Donovan, P.C.,
Great Falls, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
Attorney General, Helena, Montana

Brant Light, County Attorney; Joel Thompson, Deputy County Attorney,
Great Falls, Montana

Submitted on Briefs:  August 29, 2003

Decided:  February 15, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 William W. Cameron, Sr. (Cameron), appeals from a jury verdict rendered October 29, 2002, in the Eighth Judicial District Court, Cascade County, finding him guilty of sexual assault. We affirm.

¶2 The following issues are presented for appeal:

¶3 1. Did the District Court abuse its discretion in refusing to instruct the jury on misdemeanor assault as a lesser included offense?

¶4 2. Did the District Court err in admitting a hearsay statement into evidence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Cameron attacked his granddaughter's fourteen-year-old friend, T.P., at his home on February 18, 2002. Cameron's granddaughter and T.P. often went to Cameron's to "hang out." T.P. considered herself close to Cameron, calling him "Grandpa."

¶6 On this particular day, T.P. went to Cameron's mobile home by herself because she was bored. While T.P. was there, Cameron drank shots of vodka until he was admittedly "really drunk." No one else was in the residence.

¶7 After playing for a while with a pet bird, T.P. went to use the restroom. As she came out of the hallway near the bathroom, Cameron pushed her through a doorway onto a bed. Cameron grabbed her breasts, ripping her shirt. He licked her face and rubbed himself against her, simulating intercourse. Cameron told her to remove her pants, but she refused. T.P. managed to get out from under him and fell onto the floor. Cameron fell to the floor as well, blocking her exit from the room. As T.P. was trying to get up, Cameron grabbed her

by the hair and pulled her toward his crotch, giving her a fellatiory directive. She pulled back and escaped from the room.

¶8   T.P. subsequently ran and walked the eight miles back to her home, crying the entire way. When T.P. arrived home, she changed clothes, wrapped a blanket around her and sat on her porch, crying. Her sister, J.P., was home at the time, along with her boyfriend. J.P.'s boyfriend went outside and asked T.P. what was wrong. T.P. asked for her sister. J.P. went to T.P. on the porch, and T.P. clung to J.P., weeping. J.P. testified, "I have never been held so tight in my life by her."

¶9   During J.P.'s testimony, she described what happened next:

Q. [By the State]  So how did you feel before [T.P.] said anything?

A. I got scared.

Q. So you were scared about--what were you scared about?

A. What she was going to say.

Q. What did she say?

A. I asked her what was wrong repeatedly. And she said that –

MR. VAN DER HAGEN [Defense Counsel]: We're going to object to this as hearsay.

MR. [sic] RIES [State]: It's in the present impression, your Honor.

THE COURT: All right. Overruled.

Q. (BY MS. RIES)  So you asked her repeatedly what was wrong?

A. Uh-huh.

Q. What did she say?
A. She said, "Grandpa tried raping me."

3

Q. "Grandpa tried raping me?"

A. Uh-huh.

Q. Did you know who she meant?

A. Uh-huh.

Q. Who did she mean?

A. Bill Cameron.

¶10 J.P. told T.P. to call the police, which she did from her neighbor's house. Officer Pre'tat responded. He took photographs of T.P. depicting scratches on her face. J.P. testified that T.P. also had scratches and bruises on her chest that she did not show to Officer Pre'tat. T.P. gave the officer the stretched and ripped shirt that she had been wearing during the incident with Cameron.

¶11 Cameron was charged with one count of felony sexual assault, two counts of misdemeanor assault, and one count of unlawful restraint. Prior to trial, the State moved to dismiss all counts except sexual assault, which the District Court granted.

¶12 During trial, Cameron submitted proposed jury instructions on misdemeanor assault as a lesser included offense of sexual assault. The District Court denied the instruction. Cameron was convicted of sexual assault, and he now appeals.

**STANDARD OF REVIEW**

¶13 We review criminal jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law. *State v. Bowman*, 2004 MT 119, ¶ 49, 321 Mont. 176, ¶ 49, 89 P.3d 986, ¶ 49. District courts have broad discretion in

4

formulating jury instructions, and we review such formulations for abuse of discretion. *Bowman*, ¶ 49.

¶14    This Court reviews a district court's evidentiary rulings for abuse of discretion. *State v. Nolan*, 2003 MT 55, ¶ 16, 314 Mont. 371, ¶ 16, 66 P.3d 269, ¶ 16; *see also State v. Hope*, 2001 MT 207, ¶¶ 9-11, 306 Mont. 334, ¶¶ 9-11, 33 P.3d 629, ¶¶ 9-11.

## DISCUSSION

¶15    *1. Did the District Court abuse its discretion in refusing to instruct the jury on misdemeanor assault as a lesser included offense?*

¶16    Cameron's challenge to the District Court's failure to instruct the jury on a lesser included offense begins with a preliminary argument concerning the tactics of the State. Cameron notes that he had originally been charged with three misdemeanor offenses, including misdemeanor assault, in addition to the felony sexual assault charge, but that the State moved to dismiss the misdemeanor charges three days prior to trial, citing potential double jeopardy concerns, and the District Court granted the motion. Cameron argues that there was no actual double jeopardy problem with the charges against him, but, rather, the State raised the double jeopardy issue as a "ruse" to cover its real purpose: to block Cameron's defense that he had committed only misdemeanor assault, and not felony assault. Citing *People v. Barton* (Cal. 1995), 906 P.2d 531, 536, for the proposition that "neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged," Cameron argues that the State acted improperly.

¶17     We do not disagree with *Barton*'s principle that the jury should not be precluded from considering "a lesser offense included in the crime charged." Whether misdemeanor assault is, indeed, a lesser offense included within sexual assault is the central issue here. However, Cameron is incorrect in asserting that the State acted improperly by dismissing the misdemeanor charges simply to block Cameron's strategy of seeking conviction of a lesser offense–whether or not "double jeopardy" was the reason it sought dismissal of the charges. "[T]hough the State may well have strategically avoided a double jeopardy defense by its charging decision, there is no error in doing so. The State is vested with broad discretion in making charging decisions." *State v. Matt*, 2005 MT 9, ¶ 10, 325 Mont. 340, ¶ 10, ___P.3d___, ¶ 10. "[T]he rule of law we apply to alternative offenses is that of prosecutorial discretion." *State v. Beavers*, 1999 MT 260, ¶ 39, 296 Mont. 340, ¶ 39, 987 P.2d 371, ¶ 39. "Where the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." *State v. Fuqua*, 2000 MT 273, ¶ 13, 302 Mont. 99, ¶ 13, 13 P.3d 34, ¶ 13 (citing *Beavers*, ¶ 39). Here, by deciding to dismiss the misdemeanor charges, the State narrowed the case–the elements of the offenses and the range of evidentiary proof necessary for conviction of a charged offense–and by so doing also broadened the risk that Cameron would be acquitted of the single remaining charge, sexual assault. Its decision to "put all of its eggs in one basket" is a strategical one that falls within its discretion and is not improper. That does not mean, however, that the State can block a jury instruction for an offense which was actually included within the remaining felony offense, an issue to which we now turn.

6

¶18    Noting that § 46-16-607(2), MCA, requires a lesser included offense instruction to be given "when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense," Cameron argues that, under the evidence here, the jury could have concluded that he was guilty of misdemeanor assault, and thus, an instruction was required. He offers that misdemeanor assault, as defined both by subsection (a) and subsection (c) of § 45-5-201, MCA,[1] constitutes a lesser offense included within sexual assault, a felony, as that offense is defined by § 45-5-502, MCA.[2]

¶19    An "included offense," as defined by statute, means an offense which:

>    (a) is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>    (b) consists of an attempt to commit the offense charged or to commit an offense otherwise included in the offense charged; or

---

[1]    **45-5-201 Assault.**    (1) A person commits the offense of assault if the person:
>    (a)  purposefully or knowingly causes bodily injury to another;
>    . . .
>    (c) purposefully or knowingly makes physical contact of an insulting or provoking nature with any individual.

[2]    **45-5-502 Sexual assault.**  (1) A person who knowingly subjects another person to any sexual contact without consent, commits the offense of sexual assault.
>    . . . .
>    (3)  If the victim is less than 16 years old and the offender is 3 or more years older than the victim or if the offender inflicts bodily injury upon anyone in the course of committing sexual assault, the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 4 years, or more than 100 years and may be fined not more than $50,000.

(c) differs from the offense charged only in the respect that a less serious injury or risk to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.

Section 46-1-202(9), MCA. Cameron concedes, pursuant to our decision in *Beavers*, which explained that the term "facts" in subsection (a) of § 46-1-202(9), MCA, refers to the statutory elements of the charged offense and not to the individual facts of the case, that misdemeanor assault is not a lesser included offense of sexual assault under that subsection. However, he argues that misdemeanor assault constitutes a lesser included offense of sexual assault under either subsection (b) or subsection (c) of § 46-1-202(9), MCA. He correctly notes that an offense may qualify as a lesser included offense under any of the three subsections of § 46-1-202(9), MCA. *See Beavers*, ¶ 25. We begin with Cameron's arguments under subsection (c) of the statute, and then turn to his arguments under subsection (b).

¶20 "Two criteria must be met before a defendant is entitled to a lesser included offense instruction. First, the offense must actually constitute a lesser included offense of the offense charged, and, second, there must be sufficient evidence to support the included offense instruction." *State v. Martinez*, 1998 MT 265, ¶ 10, 291 Mont. 265, ¶ 10, 968 P.2d 705, ¶ 10. Under the first criterion, Cameron argues that the misdemeanor assault "actually constitutes" a lesser included offense under subsection (c) of § 46-1-202(9), MCA, because the elements of that offense are similar to the elements of sexual assault and, thus, the misdemeanor differs only by posing a "less serious risk." Cameron reasons that sexual assault involves a greater risk of both physical and psychological injury to the victim.

8

Although conceding that misdemeanor assault does not present a "lesser serious kind of culpability" or "less serious injury" than sexual assault, Cameron notes our holding in *State v. Fisch* (1994), 266 Mont. 520, 881 P.2d 626, wherein we concluded that subsection (c) is "written in the disjunctive and with an 'only' qualifier. Thus, an included offense may differ from the offense charged by way of a less serious injury or a less serious risk or a lesser kind of culpability. In other words, an offense is an included offense under [subsection (c)], if it differs from the charged offense in one, but only one, of the three ways set forth in the subsection." *Fisch*, 266 Mont. at 523, 881 P.2d at 628.

¶21    Comparing the elements, Cameron first notes that, as defined by § 45-5-502, MCA, sexual assault occurs when a person "knowingly subjects another person to any sexual contact without consent." He further notes that the definition of "sexual contact" includes the "touching of the sexual or other intimate parts of the person of another . . . in order to knowingly or purposely . . . cause bodily injury to or humiliate, harass or degrade another," § 45-2-101(66)(a), MCA. Cameron then explains that misdemeanor assault, as defined under subsection (1)(a) of § 45-5-201, MCA, is committed if a person "purposely or knowingly causes bodily injury to another," and thus, he asserts that the jury could have determined that he had merely purposely or knowingly caused bodily injury to T.P. Likewise, Cameron notes that misdemeanor assault, as alternatively defined under subsection (1)(c) of § 45-5-201, MCA, is committed when a person "purposely or knowingly makes physical contact of an insulting or provoking nature with any individual," and thus, he asserts that the jury could have determined that he had merely purposely or knowingly made physical contact of any

9

insulting or provoking nature upon T.P.  Therefore, Cameron contends that misdemeanor assault as defined under either subsection (1)(a) or subsection (1)(c) "actually constitutes" an included offense to sexual assault.

¶22    Responding to Cameron's argument, the State argues that the elements of the offenses are not similar, and therefore, misdemeanor assault does not "actually constitute" an included offense to sexual assault.  The State first explains that § 45-2-101(66), MCA,[3] contains not one, but two different definitions of "sexual contact"–one which includes bodily injury or humiliation as elements (subsection (a)), and one which does not (subsection (b)).  The State points out that, although Cameron's argument compares the elements of misdemeanor assault to the sexual contact definition in subsection (66)(a)–"cause bodily injury to or humiliate, harass or degrade another"–the sexual assault charge against him did not allege that kind of sexual contact.  Rather, the Information alleged sexual assault by way of sexual contact as defined by subsection (66)(b): "The above-named defendant knowingly subjected another person, Jane Doe, to sexual contact without consent . . . by grabbing her breast and simulating sexual intercourse on top of her."  Further, the District Court gave the jury an instruction consistent therewith, a precise quote from subsection (66)(b), which stated that "sexual contact" is the "touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely arouse or gratify

---

[3]    "Sexual contact" means touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely:
(a) cause bodily injury to or humiliate, harass or degrade another; or
(b) arouse or gratify the sexual response or desire of either party.

the sexual response or desire of either party." Thus, the State argues, the sexual assault charge as set forth in the Information and in the jury instructions included neither the element of bodily injury, which Cameron compares to the definition of misdemeanor assault under § 45-5-201(1)(a), MCA, nor the element of touching intended to "humiliate, harass, or degrade another," which Cameron compares to the definition of misdemeanor assault under § 45-5-201(1)(c), MCA. Although these elements of misdemeanor assault are comparable to those within the definition of sexual contact as set forth in subsection (66)(a), that definition of sexual contact was not part of the charge filed here. The State further notes that Cameron's own proposed jury instructions were based solely on subsection (66)(b). Thus, the State contends that misdemeanor assault as defined by either subsection (1)(a) or (1)(c) of § 45-5-201, MCA, does not constitute an included offense of sexual assault because neither subsection differs from sexual assault *only* in the respect that the former is "less serious," as Cameron asserts. Rather, the elements are dissimilar and do not overlap.

¶23    We agree with the State. Misdemeanor assault did not differ from sexual assault "only in respect that a less serious" risk exists. The offense as charged in the Information and stated by the jury instructions did not define sexual contact as including an element of bodily injury or physical contact to humiliate, harass or degrade, but, rather, defined sexual contact as touching to arouse or gratify the sexual response or desire of either party. Thus, the "risk" was not the *only* difference between these crimes. Additionally, there is a clear difference in the assailant's intention.

11

¶24    In *State v. Long* (1986), 223 Mont. 502, 726 P.2d 1364, we addressed this issue under prior law. Although both parties offer that *Long* is outdated in that it applied the *Blockburger*[4] test, which we have now abandoned, that case also entertained the same arguments as offered by Cameron with regard to the offenses at issue here. We observed:

> In order to adopt the defendant's lesser included offense theory, this Court must find that sexual contact and physical contact of an insulting or provoking nature are interchangeable terms. This we will not do. The defendant's contentions that misdemeanor assault is a lesser included offense of sexual assault is not supported by the law.

*Long*, 223 Mont. at 510, 726 P.2d at 1369. After examination of the current statutes, we reach the same conclusion today about the elements of these offenses.

¶25    Cameron argues that the District Court erred by relying upon *Long* and *Blockburger* and, further, by stating that it was denying the request for a lesser included offense instruction because Cameron "didn't offer any alternate explanation" as to what had occurred. Cameron asserts that despite his right not to testify, the District Court "held it against him." Cameron does not cite any authority for this argument, but further, we do not take from the District Court's statements that it was basing its decision on Cameron's election not to testify. It was referring more generally to the lack of any evidence which contradicted the State's case. In any event, this Court affirms a district court's ruling if it reaches the correct result, even if it does so for the wrong reason. *Ritchie v. Town of Ennis*, 2004 MT 43, ¶ 8, 320 Mont. 94, ¶ 8, 86 P.3d 11, ¶ 8. Because the District Court did not abuse its discretion in denying Cameron's request for a lesser included offense instruction,

---

[4]*Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306.

12

we conclude that the District Court's ruling reached the correct result, even if based on an incorrect rationale.

¶26    Lastly, Cameron argues that misdemeanor assault constitutes a lesser included offense to sexual assault under § 46-1-202(9)(b), MCA, which provides that an "included offense" is an offense which "consists of an attempt to commit the offense charged." Cameron asserts that an individual could cause bodily injury or could make physical contact of an insulting or provoking nature–the elements of misdemeanor assault–as part of an "attempt" to commit the charged crime of sexual assault. However, Cameron misreads the statutes. "A person commits the offense of attempt when, with the purpose to commit a specific offense, he does any act toward the commission of such offense." Section 45-4-103(1), MCA. Further, a person convicted of attempt is punishable in the same manner as for conviction of the offense which was attempted. Section 45-4-103(3), MCA. Thus, the included offense here would not be misdemeanor assault, but *attempted sexual assault*. Cameron did not seek an included offense instruction for this felony.

¶27    Because we conclude that misdemeanor assault does not constitute an included offense of sexual assault as charged here, we need not address Cameron's argument, under the second *Martinez* criterion, that sufficient evidence existed to support his request for a jury instruction.

¶28    We review "whether the [jury] instructions, as a whole, fully and fairly instruct the jury on the applicable law" and give district courts broad discretion in formulating such instructions. *State v. German*, 2001 MT 156, ¶ 10, 306 Mont. 92, ¶ 10, 30 P.3d 360, ¶ 10.

13

Additionally, we have consistently held, a trial court "need not give an instruction on a lesser included offense when there is no evidence to support it." *German*, ¶ 11. Here, we conclude that the District Court did not abuse its discretion and correctly instructed the jury, and, consequently, that Cameron suffered no loss of constitutional rights.

¶29 ***2. Did the District Court err in admitting a hearsay statement into evidence?***

¶30 As noted above, in the exchange between J.P. and the State's attorney, the District Court admitted into evidence T.P.'s hearsay statement, "Grandpa tried raping me." Cameron argues that T.P.'s statement was inadmissible as a prior consistent statement. The State agrees but contends that the statement was admissible as an excited utterance. Both parties agree that it does not fit within the present sense impression exception to the hearsay rule as the State argued at trial.

¶31 The record is silent both as to the prosecution's reason for offering the statement and as to the court's justification for admitting it. The statement clearly was not present sense impression since it did not describe contemporaneous events. *See* Rule 803(1), M.R.Evid. However, we will affirm a district court's ruling even if it reached the correct result for the wrong reason. *Davis v. State*, 2004 MT 112, ¶ 13, 321 Mont. 118, ¶ 13, 88 P.3d 1285, ¶ 13.

¶32 The State argues that the District Court's ruling should be upheld because the statement was an excited utterance. Rule 803(2), M.R.Evid., defines an excited utterance as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." We have not previously considered this hearsay exception under similar circumstances.

14

¶33    The record indicates that T.P. arrived at Cameron's trailer around six or seven in the evening. It is not clear how long T.P. stayed at Cameron's before she was attacked and ran home, but she evidently had enough time to converse with Cameron, play with the pet bird, and use the restroom. After the attack, T.P. had to travel roughly eight miles on foot, running at first and then walking. Very shortly after arriving home, T.P. made the statement to her sister. Thus, although the testimony is imprecise about the time which had elapsed, it can be reasonably inferred from the testimony that T.P. made the statement within an hour or two after the assault.

¶34    Further circumstances are also relevant to resolution of this issue. T.P. wept from the moment she left Cameron's until well after she uttered the hearsay statement. As she arrived home, T.P. showed no sign of diminished excitement. To the contrary, when her sister went to the porch, T.P.'s physical action of grabbing J.P. and clutching her firmly until she was able to cease sobbing long enough to utter, "Grandpa tried raping me," demonstrates that T.P. was still laboring under the stress of excitement caused by the attack.

¶35    Given these circumstances, we agree with the State. The facts adequately demonstrate that T.P. made a statement relating to a startling event while she was under the stress caused by the event. Thus, we conclude that her statement was an excited utterance as defined by Rule 803(2), M.R.Evid.

¶36    Though we have not previously addressed the question, our conclusion is not without precedent in other states. *See State v. Strauss* (Wash. 1992), 832 P.2d 78, 86 (victim's statement to officer qualified as an excited utterance, though made up to three and a half

hours after her flight from a rapist); *State v. Parker* (Idaho 1986), 730 P.2d 921, 924 (affirming as an excited utterance a crying, red-eyed, tired-looking, fourteen-year-old victim's statement to her cousin, a State Fish and Game officer, two to three hours after her rape by a stranger, even though she silently waited for the cousin in the presence of her parents); *State v. Burns* (R.I. 1987), 524 A.2d 564, 567 (eleven-year-old child's statement to mother hours after rape by stepfather was properly admitted as an excited utterance because the child's "upset" and "suspicious" demeanor, her fear of the defendant, her hesitancy in speaking about the incident, her tender years, and the short time between the incident and her mother's arrival home tended to show the statements were sufficiently trustworthy and not the product of deliberation or contrivance); *Fudge v. State* (Ark. 2000), 20 S.W.3d 315, 321 (admission of victim's statement to friends, one to several hours after incident, that the defendant had beaten, choked, and raped her was not abuse of discretion where victim appeared nervous and scared until some time after she made the statement).

¶37    For the foregoing reasons, we hold that the District Court did not abuse its discretion by admitting the statement into evidence because it qualified under the excited utterance exception to the hearsay rule.

## CONCLUSION

¶38    The District Court did not err by refusing the defendant's proposed instruction on misdemeanor assault as a lesser included offense of felony sexual assault. The District Court did not abuse its discretion by admitting the hearsay statement into evidence.

¶39    Affirmed.

/S/ JIM RICE

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER